## WILLIAMS *v.* STATE OF ARKANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 138. Submitted March 11, 1910.—Decided April 4, 1910.

State legislation which in carrying out a public purpose is limited in its application, is not a denial of equal protection of the laws within the meaning of the Fourteenth Amendment if within the sphere of its operation it affects alike all persons similarly situated. *Barbier* v. *Connolly*, 113 U. S. 27.

When a state legislature has declared that, in its opinion, the policy of the State requires a certain measure, its action should not be disturbed by the courts under the Fourteenth Amendment, unless they can clearly see that there is no reason why the law should not be extended to classes left untouched. *Missouri, Kansas & Texas Railway Co.* v. *May*, 194 U. S. 267.

A classification in a state statute prohibiting drumming or soliciting on trains for business for any "hotels, lodging houses, eating houses, bath houses, physicians, masseurs, surgeon or other medical practitioner" will not be held by this court to be unreasonable and amounting to denial of equal protection of the laws, after it has been sustained by the state court as meeting an existing condition which was required to be met; and so held that the anti-drumming or soliciting law of Arkansas of 1907 is not unconstitutional because it relates to the above classes alone and does not prohibit drumming and soliciting for other purposes.

85 Arkansas, 470, affirmed.

THE facts, which involve the constitutionality of the anti-drumming law of Arkansas of 1907, are stated in the opinion.

*Mr. George B. Rose,* with whom *Mr. U. M. Rose, Mr. W. E. Hemingway, Mr. D. H. Cantrell* and *Mr. J. P. Loughborough* were on the brief, for plaintiff in error:

The act is unconstitutional as it deprives appellant of the liberty and the equal protection of the laws guaranteed by the Fourteenth Amendment.

It is an unlawful restriction upon the liberty of the citizen. The guaranty of life, liberty and the pursuit of happiness, secures to the citizen the right to pursue any calling not injurious to the public and to protect him against all interference with his business not in the lawful exercise of the police power. The police power is limited to those things essential to the safety, health, comfort and morals of the community, and any enactment seeking to restrict the liberty of a citizen in matters not falling within the scope of the police power as thus defined, is unconstitutional and void.

The occupation of drumming or soliciting for legitimate forms of business is not merely a lawful, but a most important, calling. In this particular instance, the appellant is earning his livelihood by drumming and soliciting for his own boarding house.

This is not a case of an occupation tax. The drummers are not taxed; they are forbidden altogether to exercise their callings. As to the right to pursue any lawful business, see *Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S. 757; *Mugler* v. *Kansas,* 123 U. S. 623; *Lawton* v. *Steele,* 152 U. S. 137; *Allgeyer* v. *Louisiana,* 165 U. S. 589; *Lochner* v. *New York,* 198 U. S. 57. The principles announced by this court have frequently been applied by the state courts. See *Bassett* v. *People,* 193 Illinois, 334; 62 N. E. Rep. 219, 220; *Bailey* v. *People,* 190 Illinois, 28; *People* v. *Gillison,* 98 N. Y. 108; 17 N. E. Rep. 343; *Ritchie* v. *People,* 155 Illinois, 88; 40 N. E. Rep. 454; *Ex parte Jacobs,* 98 N. Y. 105; *Ex parte Whitewell,* 98 California, 73; 32 Pac. Rep. 872; *People* v. *Beattie,* 89 N. Y. Supp. 193; *State* v. *Peel Splint Coal Co.,* 36 W. Va. 856; *State* v. *Goodwill,* 33 W. Va. 179; *Bracewell* v. *People,* 147 Illinois,

66; *People* v. *Warden,* 157 N. Y. 116; 51 N. E. Rep. 1006; 2 Hare's Am. Law, 777; Cooley's Const. Lim., 6th ed., 738.

The claim that this act merely prevents appellant from soliciting custom for his boarding house, and does not interfere with his right to conduct it, begs the question. The right to advertise a business and to solicit custom is essentially an incident to the right to do business. See *Robbins* v. *Shelby Taxing District,* 120 U. S. 489, which has been approved in *Asher* v. *Texas,* 128 U. S. 129; *Stoutenburgh* v. *Hennick,* 129 U. S. 143; *Brennan* v. *Titusville,* 153 U. S. 289; *McCall* v. *California,* 136 U. S. 104; *Caldwell* v. *North Carolina,* 187 U. S. 622; *Gunn* v. *White Sewing Machine Co.,* 57 Arkansas, 24; *Hurford* v. *State,* 91 Tennessee, 673; 20 S. W. Rep. 201; *Coit* v. *Scott,* 98 Tennessee, 258; 39 S. W. Rep. 1; *Clements* v. *Casper,* 9 Wyoming, 497; 35 Pac. Rep. 473; *Overton* v. *State,* 70 Mississippi, 559; 13 So. Rep. 227; *Pegues* v. *Ray,* 50 La. Ann. 579; 23 So. Rep. 904; *McLaughlin* v. *South Bend,* 126 Indiana, 472; 26 N. E. Rep. 185; *Bloomington* v. *Bourland,* 137 Illinois, 536; 27 N. E. Rep. 692; *Toledo Com. Co.* v. *Glenn Mfg. Co.,* 55 Ohio St. 222; 45 N. E. Rep. 197; *Mershon* v. *Pottsville Lumber Co.,* 187 Pa. St. 16; 40 Atl. Rep. 1018; *Simons Hdw. Co.* v. *McGuire,* 39 La. Ann. 850; 2 So. Rep. 592; *State* v. *Agee,* 83 Alabama, 112; 3 So. Rep. 856; *Stratford* v. *Montgomery,* 110 Alabama, 626; 20 So. Rep. 129; *State* v. *Bracco,* 103 N. C. 350; 9 S. E. Rep. 404; *Wrought Iron Range Co.* v. *Johnson,* 84 Georgia, 758; 11 S. E. Rep. 233; *Emmons* v. *Lewiston,* 132 Illinois, 382; 24 N. E. Rep. 58; *State* v. *Rankin,* 11 S. Dak. 148; 76 N. W. Rep. 299; *Ames* v. *People,* 25 Colorado, 511; 56 Pac. Rep. 725; *Ex parte Rosenblatt,* 19 Nevada, 441; 14 Pac. Rep. 298; *Fort Scott* v. *Pelton,* 39 Kansas, 766; 18 Pac. Rep. 954; *State* v. *Hickox,* 64 Kansas, 654; 68 Pac. Rep. 35; *Talbutt* v. *State,* 39 Tex. Crim. 65; 44 S. W. Rep. 1091; *French* v. *State,* 42 Tex. Crim. 224; 58 S. W. Rep. 1015; *State* v. *Hanaphy,* 117 Iowa, 18; 90 N. W. Rep. 601; *Adkins* v. *Richmond,* 98 Virginia, 101; 34 S. E. Rep. 967; *Stone* v. *State,* 117 Georgia, 296; 43 S. E. Rep. 740; *Commonwealth* v.

*Pearl Laundry Co.*, 49 S. W. Rep. 28; *Wagner* v. *Meakin,* 92 Fed. Rep. 76; *In re Tinsman,* 95 Fed. Rep. 648; *In re Kimmel,* 41 Fed. Rep. 775; *In re Houston,* 47 Fed. Rep. 539; *In re Mitchell,* 62 Fed. Rep. 576; *In re Hough,* 69 Fed. Rep. 330; *Ex parte Loeb,* 72 Fed. Rep. 657; *Louisiana* v. *Lagarde,* 60 Fed. Rep. 186; *Ex parte Green,* 114 Fed. 959; *Delamater* v. *South Dakota,* 205 U. S. 100; *People* v. *Armstrong,* 73 Michigan, 288.

The statute cannot be justified on the principle that it applies only to persons traveling upon railroads. Passengers who avail themselves of their services do not surrender their liberty as citizens; nor can the act be justified on the ground that it tends to secure the comfort of other passengers. Cooley's Const. Lim., 6th ed., 510–518.

Under the common law, to solicit a person's patronage for a hotel or boarding house was not a crime, and therefore it is not within the power of the legislature to make such use of the right of free speech an offense.

The act also deprives the citizen of the equal protection of the law. It applies only to the keepers of hotels, lodging, eating and bath houses, among pursuits open to all the world. It applies also to medical practitioners; but as their vocation is one which concerns the public health and which is not pursued as of right, but only by leave of the State, they are legitimately subject to police regulation, and for the purposes of this case, they may be dismissed from our consideration.

Acts which single out one class of citizens and impose upon them burdens or restraints not imposed upon others, can only be justified by inherent differences. If they are merely arbitrary, they deny to the citizen the equal protection of the law guaranteed by the Fourteenth Amendment. The equal protection of the laws is a pledge of the protection of equal laws. See *Yick Wo* v. *Hopkins,* 118 U. S. 368. The requirement of equal laws does not exclude classification, but the classification must not be arbitrary. It must be based on reason. *Gulf, Colorado & Santa Fe Ry.* v. *Ellis,* 165 U. S.

150; *Atchison, Topeka & Kansas R. R.* v. *Mathews,* 174 U. S. 96; *Railroad Tax Cases,* 13 Fed. Rep. 733; *Walley's Heirs* v. *Kennedy,* 2 Yerger, 554; 24 Amer. Dec. 512; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 555. See also *State* v. *Conlon,* 65 Connecticut, 478; 33 Atl. Rep. 521; *Millett* v. *People,* 117 Illinois, 284; 7 N. E. Rep. 635; *Ritchie* v. *People,* 155 Illinois, 88; 40 N. E. Rep. 456; *Frorer* v. *People,* 141 Illinois, 171; 31 N. E. Rep. 397; *Braceville Coal Co.* v. *People,* 147 Illinois, 66; 35 N. E. Rep. 63; *Dobbins* v. *Los Angeles,* 195 U. S. 236.

This court has of late refused to set aside a number of state laws on the ground that they were in conflict with the equality clause; but it seems that the case now presented shows an oppressive and inexcusable violation of the equality clause, and that the act should be held unconstitutional in so far as it applies to keepers of boarding houses.

*Mr. Hal. L. Norwood,* Attorney General of the State of Arkansas, *Mr. C. A. Cunnir ham* and *Mr. William F. Kirby,* for defendant in error:

The statute is a police regulation and clearly within the power of the State. The State has the inherent power to make all laws necessary for the protection of the health, safety, morals and comfort of its citizens and to promote the public convenience and general welfare.

The rights of property and liberty even, guaranteed by the Constitution against deprivation without due process of law, are subject to such reasonable restraints under the police power as the common good or general welfare may require. It is within the province of the legislature to declare the public policy and it has broad discretion to determine what the public interests require and what measures are necessary for their protection.

The purpose of the act is apparent. It was to promote the comfort of the public traveling upon railroad trains in the State, and especially of passengers journeying to Hot Springs,

where the halt, the lame, the sick and diseased of the earth, pain-laden, come to seek relief from their burden of suffering, in the justly world-famed healing waters, and protect them from annoyance from the insistent, harassing, persistent and continuous solicitations and importunities of the pestiferous drummer who made himself an insufferable nuisance.

The act was necessary; was within the power of the law-making body and is a wholesome regulation. *McLean* v. *Arkansas*, 211 U. S. 546; *Gundling* v. *Chicago*, 177 U. S. 183; *Jacobson* v. *Massachusetts*, 197 U. S. 11; *Adair* v. *United States*, 208 U. S. 172; *Lochner* v. *New York*, 198 U. S. 45, 53, 56; *Mugler* v. *Kansas*, 123 U. S. 623; *In re Kemmler*, 136 U. S. 436; *Crowley* v. *Christenson*, 137 U. S. 86; *In re Converse*, 137 U. S. 624; *Chicago, Burlington & Quincy Ry.* v. *Drainage Commissioners*, 200 U. S. 584; *Bacon* v. *Walker*, 204 U. S. 311. See also *Ohio Oil Co.* v. *Indiana*, 177 U. S. 190; *Clark* v. *Nash*, 198 U. S. 361; *Strickley* v. *Highland Boy Gold Mining Co.*, 200 U. S. 527; *Offield* v. *N. Y., N. H. & H. R. R. Co.*, 203 U. S. 372; *Plessy* v. *Ferguson*, 163 U. S. 537.

Railroads are vast enterprises, great highways of commerce, public highways, that are permitted to be organized and exist for the public convenience and benefit and are subject to such regulation as the public good may require. *Donovan* v. *Pennsylvania Co.*, 199 U. S. 279, 293, 296; *Cherokee Nation* v. *Southern Kansas Railway Co.*, 135 U. S. 641, 651.

The hotel drummer and hackman have long been regarded as belonging to that class of persons whose occupation or business may be regulated for the public good and the railroad companies themselves have the right to prohibit drumming or soliciting for hotels, boarding houses and hack lines upon their trains and depot platforms. *St. Louis, I. M. & S. Ry.* v. *Osborn*, 67 Arkansas, 399; *Landrigan* v. *State*, 31 Arkansas, 51; *Lindsay* v. *Anniston*, 104 Alabama, 261; *Donovan* v. *Pennsylvania Co.*, 199 U. S. 279; McQuillan on Municipal Ordinances, §§ 28, 134; *Burrow* v. *McNeill*, 84 Arkansas, 552.

The act does not deny plaintiff the equal protection of the law. The State has the power of classification in legislation, and as this court has said, "may distinguish, select and classify objects of legislation, and necessarily the power must have a wide range of discretion." *Magoun* v. *Ill. Trust & Savings Bank,* 170 U. S. 283; *Farmers' & Merchants' Ins. Co.* v. *Debney,* 189 U. S. 301; *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557; *Bacon* v. *Walker,* 204 U. S. 311; *McLean* v. *Arkansas,* 211 U. S. 546; *Ozan Lumber Co.* v. *Union County Bank,* 207 U. S. 256; *New York, N. H. & H. Ry. Co.* v. *New York,* 165 U. S. 268; *Clark* v. *Kansas City,* 176 U. S. 114; *American Sugar Ref. Co.* v. *Louisiana,* 179 U. S. 89; *Pacific Express Co.* v. *Seibert,* 142 U. S. 339; *Mo., Kan. & Texas Ry. Co.* v. *May,* 194 U. S. 276.

This law operates alike upon all whom it affects and equal protection is not denied where the law operates alike upon all persons similarly situated. *McLean* v. *Arkansas,* 211 U. S. 546; *New York* v. *Van De Carr,* 199 U. S. 552; *Western Turf Association* v. *Greenburg,* 204 U. S. 359; *Bacon* v. *Walker,* 204 U. S. 311; *Watson* v. *Nervin,* 128 U. S. 578; *State* v. *Schlemmer,* 42 La. Ann. 8; *State* v. *Moore,* 104 N. C. 714; *Ex parte Swann,* 96 Missouri, 44; *Barbier* v. *Connolly,* 113 U. S. 32; *Soon Hing* v. *Crawley,* 113 U. S. 709; *Hayes* v. *Missouri,* 120 U. S. 68; *Minneapolis & St. Louis Ry. Co.* v. *Beckwith,* 129 U. S. 26; *Ky. Ry. Tax Cases,* 115 U. S. 321; *Magoun* v. *Ill. Trust & Savings Bank,* 170 U. S. 282.

Statutes are presumed to be constitutional and it is the duty of the courts in testing their validity to resolve all doubts in favor of legislative action. *Mo., Kan. & Tex. Ry. Co.* v. *May,* 194 U. S. 287; *McLean* v. *Arkansas, supra.*

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Plaintiff in error was convicted for violating a statute of the State of Arkansas, entitled "An act for the protection of passengers, and for the suppression of drumming and soliciting upon railroad trains and upon the premises of common

carriers," approved April 30, 1907. Acts of General Assembly, 1907, p. 553, Act, 236.

The first and second sections of that act are as follows:

"SEC. 1. That it shall be unlawful for any person or persons, except as hereinafter provided in section 2 of this act, to drum or solicit business or patronage for any hotel, lodging house, eating house, bath house, physician, masseur, surgeon, or other medical practitioner, on the train, cars, or depots of any railroad or common carrier operating or running within the State of Arkansas.

"Any person or persons plying or attempting to ply said vocation of drumming or soliciting, except as provided in section 2 of this act, upon the trains, cars, depots of said railroads or common carriers, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than fifty ($50) nor more than one hundred dollars ($100) for each offense.

"SEC. 2. That it shall be unlawful for any railroad or common carrier operating a line within the State of Arkansas knowingly to permit its trains, cars or depots within the State to be used by any person or persons for drumming or soliciting business or patronage for any hotel, lodging house, eating house, bath house, physician, masseur, surgeon, or other medical practitioner, or drumming or soliciting for any business or profession whatsoever; except, that it may be lawful for railroads or common carriers to permit agents of transfer companies on their trains to check baggage or provide transfers for passengers, or for persons or corporations to sell periodicals and such other articles as are usually sold by news agencies for the convenience and accommodation of said passengers.

"And it shall be the duty of the conductor or person in charge of the train of any railroad or common carrier to report to the prosecuting attorney any person or persons found violating any of the provisions of this act, and upon a wilful failure or neglect to report any such person or persons known to be violating the provisions of this act by drumming

or soliciting said conductor or other person in charge of such train shall be deemed guilty of à misdemeanor, and upon conviction thereof shall be fined not less than fifty nor more than one hundred dollars."

The case was tried upon the following agreed statement of facts:

"The defendant has for six years been keeping a boarding house in the city of Hot Springs and was keeping the same on the 10th day of December, 1907, when he entered a train of the Little Rock and Hot Springs Western Railway Company while running in the county of Garland and State of Arkansas, and solicited and drummed the passengers on said train to induce them to come to his said boarding house to board during their sojourn in said city; and said defendant was so engaged in drumming and soliciting upon said train when he was arrested. He had paid his fare as a passenger on said train, and was riding as such passenger while engaged in drumming and soliciting."

Plaintiff in error challenged the act as unconstitutional on the grounds that it deprived him of liberty and property without due process of law, and also of the equal protection of the law guaranteed by the Fourteenth Amendment.

The principles that govern this case have been settled by very many adjudications of this court. They were sufficiently set forth in *McLean* v. *State of Arkansas*, 211 U. S. 546, in which a statute making it unlawful for mine owners, employing ten or more men underground in mining coal and paying therefor by the ton mined, to screen the coal before it was weighed, was held valid; and also that it was not an unreasonable classification to divide coal mines into those where less than ten miners were employed and those where more than that number were employed, and that a state police regulation was not unconstitutional under the equal protection clause of the Fourteenth Amendment, because only applicable to mines where more than ten miners were employed. This court in that case, discussing the police power, said:

"In *Gundling* v. *Chicago*, 177 U. S. 183, this court summarized the doctrine as follows: ··

"' Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business or occupation they shall apply, are questions for the State to determine, and their determination comes within the proper exercise of the police power by the State, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary interfered with or destroyed, without due process of law, they do not extend beyond the power of the State to pass, and they form no subject for Federal interference.' .

"In *Jacobson* v. *Massachusetts*, 197 U. S. 11, this court said:

"' But the liberty secured by the Constitution of the United States to every person within its jurisdiction, does not import an absolute right in each person to be at all times, and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is subject for the common good.'

"It is then the established doctrine of this court that the liberty of contract is not universal, and is subject to restrictions passed by the legislative branch of the government in the exercise of its power to protect the safety, health and welfare of the people. . . .

"The legislature being familiar, with local conditions, is primarily the judge of the necessity of such enactments. The mere fact that a court may differ with the legislature in its views of public policy, or that judges may hold views inconsistent with the propriety of the legislation in question, affords no ground for judicial interference, unless the act in question is unmistakably and palpably in excess of legislative power.

&ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;

"If the law in controversy has a reasonable relation to the

protection of the public health, safety or welfare, it is not to be set aside because the judiciary may be of opinion that the act will fail of its purpose or because it is thought to be an unwise exertion of the authority vested in the legislative branch of the government."

And see *Donovan* v. *Pennsylvania Company*, 199 U. S. 279.

In the present case the Supreme Court of Arkansas (*Williams* v. *State*, 85 Arkansas, 470) said.

"The legislature clearly has the power to make regulation for the convenience and comfort of travelers on railroads, and this appears to be a reasonable regulation for their benefit. It prevents annoyance from the importunities of drummers. It is suggested in argument that the statute was especially aimed at the protection of travelers to the city of Hot Springs. If this be so, we can readily see additional reason why the regulation is a wholesome one. A large percentage of those travelers are persons from distant States, who are mostly complete strangers here, and many are sick. Drummers who swarm through the trains soliciting for physicians, bath houses, hotels, etc., make existence a burden to those who are subjected to their repeated solicitations. It is true that the traveler may turn a deaf ear to these importunities, but this does not render it any the less unpleasant and annoying. The drummer may keep within the law against disorderly conduct, and still render himself a source of annoyance to travelers by his much beseeching to be allowed to lead the way to a doctor or a hotel.

" It is also argued that the act, literally construed, would prevent any person of the classes named from carrying on a private conversation on a train concerning his business. This is quite an extreme construction to place upon the statute, and one which the legislature manifestly did not intend. We have no such question, however, before us on the facts presented in the record.

" This statute is not an unreasonable restriction upon the privilege one should enjoy to solicit for his lawful business,

which, it is rightly urged, is an incident to any business. It does not prevent any one from advertising his business or from soliciting patronage, except upon trains, etc. This privilege is denied him for the public good. It is a principle which underlies every reasonable exercise of the police power that private rights must yield to the common welfare."

As to the objection that the act discriminated against plaintiff in error and denied him the equal protection of the law, because forbidding the drumming or soliciting business or patronage on the trains for any "hotel, lodging house, eating house, bath house, physician, masseur, surgeon, or other medical practitioner," which it was contended was an unreasonable classification, the state Supreme Court said:

"The legislature, in framing this statute, met a condition which existed, and not an imaginary or improbable one. The class of drummers or solicitors mentioned in the act are doubtless the only ones who ply their vocation to any extent on railroad trains. It is rare that the commercial drummer finds opportunity to meet customers and solicit trade on trains, therefore the lawmakers deemed it unnecessary to legislate against an occasional act of that kind."

It is settled that legislation which "in carrying out a public purpose is limited in its application, if within the sphere of its operation it affects alike all persons similarily situated, is not within the amendment," *Barbier* v. *Connolly*, 113 U. S. 27, and "When a State legislature has declared that, in its opinion, policy requires a certain measure, its action should not be disturbed by the court under the Fourteenth Amendment, unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched." *Missouri, Kansas & Texas Ry. Co.* v. *May*, 194 U. S. 267.

*Judgment affirmed.*