Kenneth C. HITCHCOCK, The Maryland Naturopathic Association, Inc., a body corporate, Dena Cohen, Harry E. West, Mary S. Gebhardt, Lewis Kern

v.

Henry T. COLLENBERG et al., comprising The Board of Medical Examiners for the State of Maryland et al.

Civ. No. 7866.

United States District Court
D. Maryland, Civil Division.

April 19, 1956.

John J. O'Connor, Jr., Baltimore, Md., for plaintiffs.

C. Ferdinand Sybert, Atty. Gen. of Maryland, and Stedman Prescott, Jr., Asst. Atty. Gen. of Maryland, for defendants.

Before SOPER, Circuit Judge, and CHESNUT and THOMSEN, District Judges.

THOMSEN, District Judge.

The Court of Appeals of Maryland has held that naturopathic practitioners are "practicing medicine", as that term is defined in the State Medical Practice Act, Annotated Code of Maryland, 1951 ed., Art. 43, Secs. 117–147, and that a person desiring to engage in the healing art by the practice of naturopathy may not do so without a license from one of the two State Boards of Medical Examiners. Aitchison v. State, 204 Md. 538, 105 A.2d 495, certiorari denied 348 U.S. 880, 75 S.Ct. 116, 99 L.Ed. 692.

The complaint in the instant case is filed by Dr. Kenneth C. Hitchcock, a naturopathic practitioner; the Maryland Naturopathic Association; and two Maryland residents, one Pennsylvania resident and one Ohio resident, who regularly engage, and intend to continue to engage, naturopathic practitioners of Maryland to assist them in diagnosing and treating their physical ills and ailments. They seek a ruling that the Act was improperly construed by the Maryland court, or that, as so construed, it violates plaintiffs' rights under Articles 4 and 6 of the Constitution of the United States, the 14th Amendment thereto, the anti-trust laws, the Maryland Declaration of Rights and the State Constitution.

The defendants are the members of the two Maryland Boards of Medical Examiners, the Attorney General of the

State, the State's Attorney for Baltimore City and the Police Commissioner of that City. They have moved to dismiss the complaint.

Art. 43 of the Maryland Code is entitled "Health". The State Medical Practice Act, sec. 117 et seq., was originally adopted in 1888 and has been amended a number of times.[1] It provides for two Boards of Medical Examiners authorized to issue licenses for the practice of medicine and surgery. The members of one board are appointed by the Medical and Chirurgical Faculty of Maryland, the members of the other by the Maryland State Homeopathic Medical Society. Sec. 118. A person receiving a license from either board is directed to file it with the Clerk of the Circuit Court, who registers the name of the licensee and the name of the president of the board signing the license. Anyone practicing medicine or surgery in Maryland without having obtained a license from one of these boards is guilty of a misdemeanor; so is a person who practices medicine or surgery without being registered. Secs. 126, 127, 128, 131, 136.

Sec. 138 defines "practicing medicine". as follows:

"Any person shall be regarded as practicing medicine within the meaning of this sub-title who shall append to his or her name the words or letters 'Dr.,' 'Doctor,' 'M.D.,' or any other title in connection with his name, with the intent thereby to imply that he or she is engaged in the art or science of healing, or in the practice of medicine in any of its branches, or who shall operate on, profess to heal, prescribe for, or otherwise treat any physical or mental ailment or supposed mental ailment of another, or who shall for hire or for any gratuity or compensation, either directly or indirectly to him or her paid, undertake by any appliance, operation or treatment of whatever nature, to cure, heal or treat any bodily or mental ailment or supposed ailment of another; or who for any hire, gratuity or compensation, either directly or indirectly to him or her paid, by or for any patient, shall undertake to treat, heal, cure, drive away or remove any physical or mental ailment, or supposed ailment of another, by mental or other process, exercised or invoked on the part of either the healer or the patient or both; * * * ."

A proviso makes the following exceptions to the foregoing definition: (1) gratuitous services; (2) resident and assistant resident physicians and students at hospitals in the discharge of their hospital or dispensary duties and in the offices of physicians; (3) physicians and surgeons from another State when in actual consultation with a practitioner of this State; (4) commissioned surgeons of the United States Army, Navy or insane hospital service; (5) opticians; (6) chiropodists; (7) midwives; (8) masseurs or other manual manipulators who use no other means; (9) physicians and surgeons residing on the border of a neighboring State and authorized to practice medicine and surgery therein, whose practice extends into this State; (10) dentists; and (11) the sale by druggists of proprietary or patent medicines or any official or standard drug or medicine.

Before the passage of the Medical Practice Act, the Legislature had adopted in 1884 special regulations for the practice of dentistry, Code Art. 32; it has since prescribed special regulations for the practice of optometry (1914), osteopathy (1914), chiropody (1916), chiropractic (1920), and physical therapy (1947). An optometrist obtains his license from the Board of Examiners of Optometry, Art. 43, secs. 346–364; an osteopath from the Board of Osteopathic

---

1. The original statute was amended in 1892, Chapter 296, 1894, Chapter 217, 1896, Chapter 194, 1902, Chapter 612, 1904, Chapter 690, 1908, Chapter 120, 1914, Chapter 658, 1916, Chapter 230, 1943, Chapter 59, 1945, Chapters 327, 823, 1947, Chapter 185, and 1949, Chapter 682.

Examiners, secs. 428–441; a chiropodist from the Board of Chiropody Examiners, secs. 442–455; a chiropractor from the State Board of Chiropractic Examiners, secs. 460–475; and a physical therapist from the State Board of Physical Therapy Examiners, secs. 565–575. Art. 43 also contains provisions regulating funeral directors and embalmers, pharmacists, barbers, registered nurses, plumbers, practical nurses, midwives, hairdressers and beauty culturists, including the practice of trichology.

No special provisions have been made for the licensing of naturopaths, naturopathic physicians or practitioners of naturopathy, although numerous bills have been introduced in the Legislature since 1939. After the decision of the Court of Appeals in the Aitchison case in 1954, a bill was introduced in the Maryland Legislature in 1955, known as House Bill 129, which, if it had been enacted, would have added twelve new sections to Art. 43, creating a Board of Naturopathic Examiners, providing for the licensing of naturopathic physicians, and relating generally to the practice of naturopathy. That bill contained the following definition of naturopathy:

"For the purposes of this sub-title naturopathy is hereby defined to be one of the healing arts whose scope, purposes and methods of practice are as follows: Naturopathy is a system of healing for the prevention, diagnosis, care and treatment of injuries, deformities, ailments, diseases and abnormalities of the human mind and body by means of such arts, sciences, methods and agencies of healing as make use of the healing properties and principles inherent in air, sunshine, light, electricity, heat, cold, climate, water, earths, exercise, work, rest, recreation, sweats, baths, packs, irrigations, inhalations, manipulations, corrective gymnastics, psychology, physics, mechanics, bio-chemistry, dietetics, enzymes, vitamins, minerals, tissue salts and substances naturally found in or required by the body, oxygen, ozone, herbs, external applications, apparatus, appliances, mental hygiene, physical culture, first aid, hygiene and sanitation; provided, however, that except as hereinbefore specified, the practice of naturopathy shall not include the use of drugs, surgery, destructively radioactive substances, or x-rays, except for diagnostic purposes."

It is apparent from this definition that the practice of naturopathy comes within the definition of "practicing medicine" in sec. 138, quoted above.

Dr. Hitchcock holds a Bachelor of Arts degree from the University of Florida (1918) and a Doctor of Naturopathy degree from the Blumer College of Naturopathy, of Hartford, Connecticut (1921). He was granted a license to practice naturopathy by the Connecticut State Board of Naturopathic Examiners in 1923 and similar licenses by the Florida State Board of Naturopathic Examiners in 1939 and the South Carolina Board of Naturopathic Examiners in 1932.[2] He has practiced naturopathy openly in Maryland since 1939. He is president of the Maryland Naturopathic Association, which, in 1948, filed a bill in equity against the Board of Medical Examiners in the Circuit Court No. 2 of Baltimore City for an injunction and a decree declaring that the system of healing known as naturopathy is not included in the practice of medicine as regulated by the State Medical Practice Act. A decree dismissing the bill was affirmed by the Court of Appeals of Maryland on the ground that the association had no property interests which might have been affected by any of the alleged acts of the defendants. Maryland Natur-

2. Naturopathy is specifically recognized by name as an independent branch of the healing art and licensed in the following states and territories of the United States: Arizona, 1935; Connecticut, 1923; District of Columbia, 1929; Florida, 1927; Georgia, 1950; Hawaii, 1925; Oregon, 1927; South Carolina, 1937; Texas, 1949; Utah, 1939; Virginia, 1944.

opathic Association v. Kloman, 191 Md. 626, 628, 62 A.2d 538.

Thereupon Dr. Hitchcock himself filed a bill in equity against the Board of Medical Examiners, the Police Commissioner and the State's Attorney for a declaratory decree and injunction. The decree dismissing that bill was affirmed by the Court of Appeals because " 'the general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. * * * The mere existence of a criminal statute is not such a threat as to present a justiciable controversy.' " Hitchcock v. Kloman, 196 Md. 351, 356, 76 A.2d 582, 584.

Dr. Hitchcock then applied in writing to the State Board of Medical Examiners for a license to practice naturopathy. The Secretary of the Board in a letter dated July 1, 1954, replied, in part, as follows:

" * * * We are informed by the office of the Attorney General that the Court of Appeals did not mean to imply that the State Board of Medical Examiners is authorized to license Naturopaths as such without regard to the requirements of the Medical Practice Act. In order to be licensed by this Board it is necessary that you meet the requirements for the licensing of those who desire to practice medicine."

An amendment to the complaint in the instant case alleges that since the filing of the original complaint Dr. Hitchcock has been arrested by officers of the Police Department of Baltimore City on the charge of practicing medicine without a license. After waiving a preliminary hearing, he was released on bail and held for the action of the grand jury. The grand jury has returned a presentment, but the State's Attorney has delayed preparing an indictment because of the pendency of this case, and Dr. Hitchcock is now on bail. An additional prayer has been added seeking an injunction against the State's Attorney from proceeding with the prosecution on that charge.

The complaint in this case contains forty-four numbered paragraphs, with many sub-paragraphs, and twenty-five, now twenty-six, separate prayers for relief. Aside from the matters set out above, it contains an elaborate statement of the history and principles of naturopathy, which amplifies the statement in House Bill No. 129, quoted above, and makes it even more clear that the practice of naturopathy comes within the definition of "practicing medicine" in Art. 43, Sec. 138 of the Maryland Code.

■ The salvos fired by the plaintiffs against the Maryland Act raise a great variety of points. Many of them deal with the proper construction of the Act and with the contention that it violates the Maryland Declaration of Rights and the State Constitution. Those questions cannot be considered in this case. They do not involve rights claimed under the Constitution and laws of the United States; there is no requisite of diversity of citizenship to give this court jurisdiction of non-Federal questions; and if there were, we would be bound by the decision of the Court of Appeals of Maryland, which has passed on all of them. Aitchison v. State, 204 Md. 538, 105 A.2d 495, certiorari denied 348 U.S. 880, 75 S.Ct. 116, 99 L.Ed. 692; Watson v. State of Maryland, 218 U.S. 173, 175, 177, 30 S.Ct. 644, 54 L.Ed. 987.

We have jurisdiction, however, to consider plaintiffs' contentions that fundamental rights guaranteed by the Federal Constitution are violated. Watson v. State of Maryland, 218 U.S. 173, 175, 177, 30 S.Ct. 644, 54 L.Ed. 987; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131; Crane v. Johnson, 242 U.S. 339, 37 S.Ct. 176, 61 L.Ed. 348; McNaughton v. Johnson, 242 U.S. 344, 37 S.Ct. 178, 61 L.Ed. 352. Cf. Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416. The disagreement between the parties is no longer nebulous or contingent.

■■ The individual plaintiffs, other than Dr. Hitchcock, contend that the enforcement of the Maryland law is tantamount to a prohibition of the practice

of naturopathy in Maryland by the only practitioners properly trained to administer "this form of health services", deprives them of the benefits of naturopathy in Maryland which are enjoyed by the residents of other States, threatens their health and happiness, causes them irreparable harm, injury and damage, and violates their personal and civil rights by preventing them from selecting the system of the healing art which they desire, and from deriving "the benefits accruing from the non-medical and non-surgical system known as naturopathy". But the Maryland statute does not prevent plaintiffs from applying the tenets of naturopathy in their treatment of themselves and their families, nor from receiving any naturopathic treatment which is gratuitously rendered, nor from receiving naturopathic treatment for a fee provided the naturopath or naturopathic practitioner meets the qualifications established by the State of Maryland as necessary for anyone who undertakes to heal the public for a fee. The Maryland law does not prohibit the practice of naturopathy. Any person who has met the qualifications necessary to secure a license to practice medicine, i. e. to engage in the art or science of healing, may apply the principles of naturopathy in his practice. Maryland has simply established certain requirements which must be met by any person who undertakes to practice medicine, as that term is defined in Art. 43, sec. 138, which includes "not only the application of medicine to patients, but any practice of the art of healing disease and preserving the health other than those special branches of the art that were expressly excepted." Aitchison v. State, supra, 204 Md. at page 538, 105 A.2d at page 499. The Maryland Court cited in support of this decision Commonwealth v. Zimmerman, 221 Mass. 184, 108 N.E. 893, and Collins v. Texas, 223 U.S. 288, 32 S.Ct. 286, 56 L.Ed. 439, and might have cited others, e. g. State v. Henning, 83 Ohio App. 445, 78 N.E.2d 588, appeal dismissed 150 Ohio St. 48, 80 N.E.2d 164; Louisiana State Bd. of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A.L.R. 594, affirmed sub nom Fife v. State of Louisiana, 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324. Decisions to the contrary in other states, cited by plaintiffs herein, cannot affect our decision, since we are bound by the contruction of the statute given by the Maryland court.

Requirements similar to the Maryland requirements have been repeatedly approved, for the reasons stated in the leading case of Dent v. State of West Virginia, 129 U.S. 114, at page 122, 9 S.Ct. 231, at page 233, 32 L.Ed. 623:

"Few professions require more careful preparation by one who seeks to enter it than that of medicine. It has to deal with all those subtle and mysterious influences upon which health and life depend, and requires not only a knowledge of the properties of vegetable and mineral substances, but of the human body in all its complicated parts, and their relation to each other, as well as their influence upon the mind. The physician must be able to detect readily the presence of disease, and prescribe appropriate remedies for its removal. Every one may have occasion to consult him, but comparatively few can judge of the qualifications of learning and skill which he possesses. Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications. Due consideration, therefore, for the protection of society may well induce the state to exclude from practice those who have not such a license, or who are found upon examination not to be fully qualified."

That some other states permit the licensing of naturopaths as such, without requiring them to meet the qualifications which Maryland requires, does not mean that the Maryland act abridges the rights of anyone, whether a Mary-

land resident or not, who would like to be treated in Maryland by a naturopath who has not met the Maryland requirements. The fact that one or more states may have lowered the bars which protect the public from ill-trained practitioners of the healing art does not render other states impotent to protect their own residents. Regulations of a particular trade or business essential to the public health and safety are within the legislative capacity of the state in the exercise of its police power, and unless such regulations are so unreasonable and extravagant as to interfere with property and personal rights of citizens unnecessarily and arbitrarily, they are within the power of the state. Williams v. State of Arkansas, 217 U.S. 79, 30 S.Ct. 493, 54 L.Ed. 673. This principle was applied to the practice of medicine in a case involving the Maryland Medical Practice Act. Watson v. State of Maryland, 218 U.S. 173, 178, 30 S.Ct. 644, 54 L.Ed. 987. See also: Dent v. State of West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623; Hawker v. People of State of New York, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002; Graves v. State of Minnesota, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331; Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086; Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317.

■ Plaintiffs claim that the Maryland Medical Practice Act, as interpreted and enforced by the Maryland courts and by the defendants herein, abridges their privileges and immunities, deprives them of property without due process of law, and denies them the equal protection of the laws, in violation of Art. 4, Sec. 2, and Art. 6 of the Constitution of the United States, and Sec. 1 of the 14th Amendment. They seek a declaratory decree and an injunction under Title 28 U.S.C.A. §§ 1331, 1332, 1337, 1343, 2201 and 2202, and under the civil rights acts, Title 42 U.S.C.A. §§ 1983-1985. They contend that the act is an invalid exercise of the police power, and is arbitrary, unreasonable and discriminatory in that

(1) it arbitrarily requires naturopaths to pass examinations in non-naturopathic subjects, (2) prohibits the practice of naturopathy without showing it to be detrimental to the public or inherently harmful, and (3) unfairly discriminates against naturopaths by conferring exclusive jurisdiction over them on their medical competitors.

They also claim that the Maryland law discriminates against naturopaths in that it contains special provisions for the licensing of osteopaths, physical therapists, chiropractors, optometrists and chiropodists, and does not contain similar provisions for naturopaths.

These and similar contentions have been before the courts on many occasions. In Watson v. State of Maryland, 218 U.S. 173, at page 176, 30 S.Ct. 644, at page 646, 54 L.Ed. 987, involving the very statute at issue here, the Supreme Court said:

"It is too well settled to require discussion at this day that the police power of the states extends to the regulation of certain trades and callings, particularly those which closely concern the public health. There is perhaps no profession more properly open to such regulation than that which embraces the practitioners of medicine. Dealing, as its followers do, with the lives and health of the people, and requiring for its successful practice general education and technical skill, as well as good character, it is obviously one of those vocations where the power of the state may be exerted to see that only properly qualified persons shall undertake its responsible and difficult duties."

■ The plaintiff in that case argued that the Maryland statute denied him the equal protection of the laws, in making unreasonable and arbitrary distinctions in the classification of physicians, and in making unreasonable omissions of certain classes from the requirements of the act. The Supreme Court rejected this contention, applying the rule that

"the classification of the subjects of such legislation, so long as such classification has a reasonable basis, and is not merely arbitrary selection without real difference between the subjects included and those omitted from the law, does not deny to the citizen the equal protection of the laws." 218 U.S. at page 178, 30 S.Ct. at page 646.

Discussing the exceptions in what is now Art. 43, Sec. 138 of the Maryland Code, the Supreme Court said:

" * * * We shall not take occasion to consider each of these exceptions. A reading of them makes it manifest that they are not without reason. Before a law of this kind can be declared violative of the 14th Amendment as an unreasonable classification of the subjects of such legislation because of the omission of certain classes, the court must be able to say that there is 'no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched.' Such was the expression of this court in Missouri, Kansas & Texas R. Co. [of Texas] v. May, 194 U.S. [267] 269, 24 S.Ct. 638, 48 L.Ed. [971] 972, quoted with approval in Williams v. [State of] Arkansas, supra." 218 U.S. at page 179, 30 S.Ct. at page 647.

Other cases have applied the same principles to complaints by chiropractors and naturopaths, who complained because special provisions were not made for them. Aitchison v. State, 204 Md. 538, 105 A.2d 495, certiorari denied 348 U.S. 880, 75 S.Ct. 116, 99 L.Ed. 692; Louisiana State Bd. of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A.L.R. 594, affirmed sub nom Fife v. State of Louisiana, 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324, and cases cited therein.

In Louisiana State Board v. Fife, supra, defendant chiropractors contended that they were deprived of liberty and property without due process of law because they were required to stand an examination in surgery and materia medica. They complained that those who practice chiropractic have no need for those subjects, which bear no relation to that system. The Louisiana court observed that no person has a natural or absolute right to practice medicine or surgery, but that it is a right granted upon conditions and that a state, under its police power, may regulate within reasonable bounds, for the protection of the public health, the practice of either, by defining the qualifications which one must possess before being admitted to practice. The court recognized that the legislature, in defining the qualifications required, cannot prescribe, as a condition of the right to practice, knowledge of a subject which bears no relation to the practice of medicine; but the court held that this does not mean that the legislature must make requirements such as to provide for every school of medicine that may exist, by requiring of those belonging to each particular school a knowledge only of those subjects which the theory of healing advocated and put in operation by each school requires. Were it otherwise, the legislature would be greatly hampered in the exercise of its power to protect the general health and the public from imposition and fraud. This is good law and good sense in Maryland as well as Louisiana.

Another contention of defendants in the Louisiana case was that since osteopaths, dentists, chiropodists and trained nurses were exempted from the operation of the general law and were not required to take a full course in materia medica, surgery, etc., the general law was unconstitutional because it discriminated against chiropractors by not granting them similar privileges. The Louisiana court held, however, that since the legislature is not called upon to recognize every school of medicine and to deal with it as such, defendants could not complain, on the ground of being unjustly discriminated against, that the legislature had not deemed it proper to recognize their school of medicine and make special provision for those desiring to practice that system by prescribing a

course of study in accord with the theories which it holds for restoring health. The court cited, inter alia, Johnson v. State, Tex.Civ.App., 267 S.W. 1057, and State v. Morrison, 98 W.Va. 289, 127 S.E. 75.

In Aitchison v. State, supra, the Maryland court said:

"It is beyond question that the State has the power to regulate any of the special systems or branches of the medical art independent of the general practice of medicine. The regulations adopted by the State, in the exercise of the power to regulate the treatment of disease, need not be uniform with respect to all methods and systems of practice, but distinctions may be made and schools or methods of practice may be exempted from the regulations or subjected to peculiar regulations as long as the discrimination is not arbitrary or unreasonable." 204 Md. at page 549, 105 A.2d at page 500, citing Crane v. Johnson, 242 U. S. 339, 37 S.Ct. 176, 61 L.Ed. 348, and a number of State court cases.

■ The special provisions of Art. 43 of the Maryland Code for the practice of optometry, osteopathy, chiropody, chiropractic and physical therapy limit in every case the type of treatment which the practitioner is authorized to administer; with respect to optometry and chiropody, the ills and diseased conditions which may be treated are strictly limited; and physical therapists may treat under their license only patients diagnosed and referred by licensed medical doctors. The Maryland legislature had the right to provide special regulations for these groups and to refuse to provide similar special regulations for naturopaths, who undertake to treat any and all diseases in a wide variety of fashions.

■ Plaintiffs contend that the Act is void because of vagueness in that it does not stipulate which of the two State Boards of Medical Examiners "shall have jurisdiction over this system of healing". The Act provides for two boards, one appointed by the Medical and Chirurgical Faculty and the other appointed by the Homeopathic Society. Sec. 118. A person who wishes to obtain a license to practice medicine in Maryland may apply to either board. The fact that naturopaths, such as the plaintiff Hitchcock, along with all others who desire to practice medicine in Maryland, are given the choice of applying to either one of two boards does not deprive them of any rights and privileges they would have if the statute designated the particular board to which they must apply, or if the statute provided for a single board.

■ Plaintiffs contend that the Maryland act, as interpreted by the Maryland court, violates the anti-trust laws, Title 15 U.S.C.A. §§ 1–27, 44, in that it grants the exclusive privilege of practicing medicine and surgery to persons licensed by the State Board of Medical Examiners, and thus establishes medicine as the preferred State system of healing, and curbs the progress of the art of maintaining health in the fields not specially regulated by the statute. The complete answer to this contention is that the anti-trust laws deal with individual activity and not with State activity, Parker v. Brown, 317 U.S. 341, 350, 63 S.Ct. 307, 87 L.Ed. 315; whereas all of the matters charged in the complaint as violative of the anti-trust laws are regulations prescribed by the Maryland legislature.

The amended complaint alleges no facts entitling the plaintiffs to any relief in this case, and must be dismissed, with costs.