582 F.2d 849
 The IDAHO ASSOCIATION OF NATUROPATHIC PHYSICIANS, INC., a
corporation, et al., Appellants,
v.
UNITED STATES FOOD AND DRUG ADMINISTRATION et al., Appellees.
The IDAHO ASSOCIATION OF NATUROPATHIC PHYSICIANS, INC., a
corporation, et al., Appellants,
v.
UNITED STATES FOOD AND DRUG ADMINISTRATION et al., Appellees.
The IDAHO ASSOCIATION OF NATUROPATHIC PHYSICIANS, INC., a
corporation, et al., Appellants,
v.
The STATE OF SOUTH CAROLINA, Lexington County, the State
Board of Pharmaceutical Examiners, Board of
Medical Examiners, Appellees,
United States Food and Drug Administration et al., Defendants.
The IDAHO ASSOCIATION OF NATUROPATHIC PHYSICIANS, INC., a
corporation, et al., Appellants,
v.
The STATE OF WYOMING, the Wyoming State Board of Pharmacy,
the Wyoming State Board of Medical Examiners, and
the Department of Health and Social
Services, Appellees,
United States Food and Drug Administration, United States
Department of Health, Education, and Welfare, Joseph A.
Califano, in his capacity as Secretary of the Department of
Health, Education and Welfare of the United States of
America, Defendants.
 Nos. 77-1346, 77-1908, 77-2593 and 77-2594.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 4, 1978.
Decided Aug. 28, 1978.
 
 Stanley D. Crow, Boise, Idaho (James H. Toms, Hendersonville, N. C., on brief), for appellants.
 Jack C. Tranter, Asst. Atty. Gen. of Md., Baltimore, Md., Corinne G. Russell, Asst. Atty. Gen. of S. C., Columbia, S. C., Kenneth Vines, Asst. Atty. Gen. of Wyo., Cheyenne, Wyo., Isaac T. Avery, III, Associate Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of N. C., Raleigh, N. C., on brief), John H. Anderson, Raleigh, N. C. (Carl N. Patterson, Jr., Smith, Anderson, Blount & Mitchell, Raleigh, N. C., P. Eugene Price, Jr., Winston Salem, N. C., Edward Y. Brewer, Clemmons, N. C., Richard L. Goard, Winston Salem, N. C., W. Harley Stepp, Jr., Hendersonville, N. C., William R. Pope, Mooresville, N. C., on brief), for appellees.
 Before WINTER, BUTZNER and HALL, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 In these four substantially identical cases, practitioners and students of naturopathy, patients desiring naturopathic treatment, and associations promoting naturopathy (collectively referred to as naturopaths) seek broad declaratory and injunctive relief assuring the opportunity to study and practice naturopathy and to be treated according to its methods.[1] The defendants are the Food and Drug Administration; the Secretary of Health, Education, and Welfare; the states of North Carolina, South Carolina, Maryland, and Wyoming and their agencies regulating medicine and pharmacy; and certain counties in North Carolina, South Carolina, and Maryland. The naturopaths appeal the dismissal of all county and state defendants from these actions.[2] We affirm.
 
 
 2
 * Each complaint seeks a declaratory judgment defining naturopathy as
 
 
 3
 . . . a separate and distinct healing art, science and philosophy of medicine, that is, the art, science and philosophy of natural healing, by application of the laws of nature to the human body for its care and to prevent disease by any means that will assist the self-healing processes of the body.
 
 
 4
 The naturopaths explain that this definition describes a broad range of practice illustrated by some 80 specialties such as cardio-vascular medicine, dermatology, and orthopedics. They also claim that they should be permitted to use and prescribe a variety of natural foods and medicine, including animal and vegetable substances, herbs, and non-narcotic prescription drugs. They request a declaratory judgment that the fifth and fourteenth amendments guarantee rights to practice, teach, and receive instruction in naturopathy. They also seek a judgment that every statute, regulation, and administrative practice or policy of the state and county defendants that restricts naturopathy more narrowly than the asserted definition is void and unenforceable as to all plaintiffs.
 
 
 5
 The naturopaths raise a number of constitutional issues. They allege violations of the due process and equal protection clauses because of the defendants' refusal to license practitioners of naturopathy notwithstanding the qualifications of the applicants. They assert that naturopathy is a healing art distinct from the orthodox practice of medicine. Consequently, they challenge the validity of state laws regulating medicine that sweep so broadly as to encompass naturopathy. They also allege that their rights to equal protection and due process are violated by state regulations that give medical doctors, who have a competing pecuniary interest, the power to establish licensing requirements for the separate discipline of naturopathy. They argue that ordinary doctors are not competent to judge the qualifications of a naturopath.
 
 
 6
 They assert that their freedom of academic inquiry under the first and fourteenth amendments is impaired by state regulation that creates a monopoly in favor of orthodox medicine. They voice similar complaints about regulations that make the practice of naturopathy unprofessional conduct warranting revocation of a medical license and that restrict the scope of research in health care to state-designated lines of inquiry.
 
 
 7
 Additionally, the naturopaths allege that statutes and regulations barring their profession abridge the rights of both patients and practitioners to unimpeded interstate travel secured by the privileges and immunities clauses of Article IV and the fourteenth amendment. Their patients, they claim, have a right to a reasonable choice of treatment arising from the right to privacy secured by the fifth, ninth, and fourteenth amendments. Finally, the naturopaths contend that naturopathy has advanced to such a degree that they should be allowed to present evidence that a state may no longer reasonably require a medical degree for its practice.
 
 II
 
 8
 The Maryland district court, in No. 77-1908, ruled that while the allegations respecting the jurisdictional amount under § 1331(a) were sufficient, the naturopaths lacked standing and presented no "case or controversy." The court also ruled that even if it accepted jurisdiction, Hitchcock v. Collenberg, 140 F.Supp. 894 (D.Md.1956), Aff'd, 353 U.S. 919, 77 S.Ct. 679, 1 L.Ed.2d 718 (1957), established the constitutionality of Maryland's regulation of this matter.
 
 
 9
 The South Carolina district court, in No. 77-2593, ruled that the naturopaths had presented no substantial federal question with respect to the state and county defendants. The court considered itself bound by the results in two previous suits, Dantzler v. Callison, 230 S.C. 75, 94 S.E.2d 177, Appeal dismissed for want of a substantial federal question, 352 U.S. 939, 77 S.Ct. 263, 1 L.Ed.2d 235 (1956), and Beck v. McLeod, 240 F.Supp. 708 (D.S.C.1965), Aff'd, 382 U.S. 454, 86 S.Ct. 645, 15 L.Ed.2d 522 (1966).
 
 
 10
 The Wyoming district court ruled in No. 77-2594 that the state and its agencies were immune under the eleventh amendment.
 
 
 11
 In No. 77-1346, the North Carolina district court held that the county defendants lacked the power to deprive the naturopaths of their asserted rights. It ruled that although the naturopaths had satisfied the jurisdictional amount under § 1331(a), the eleventh amendment immunized the state defendants. Finally, it held that abstention was appropriate because the naturopaths had not shown that an adequate remedy was unavailable in the state courts.
 
 
 12
 Although we uphold the judgments of dismissal in all four cases, we find it necessary to address only the issue concerning the existence of a substantial federal question.
 
 III
 
 13
 The Supreme Court has recently reiterated that a complaint must be dismissed when the federal question invoked as the basis for a district court's jurisdiction is "plainly unsubstantial . . . because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy,' " Hagans v. Lavine, 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974). See 13 Wright, Miller, and Cooper, Federal Practice and Procedure § 3564, at 427-29 (1975). Even when the Court summarily affirms or dismisses an appeal, its judgment must be recognized by inferior courts as a decision on the merits of the issues presented. Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977); Hicks v. Miranda, 422 U.S. 332, 343-45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). Since 1948, the Supreme Court has summarily affirmed or dismissed at least seven cases challenging state regulation of naturopathy. We must therefore examine the opinions and jurisdictional papers on which the Court based its dispositions. Mandel v. Bradley, 432 U.S. at 180, 97 S.Ct. 2238 (Brennan, J., concurring).
 
 
 14
 In Davis v. Beeler, 185 Tenn. 638, 207 S.W.2d 343 (1947), Appeal dismissed for want of a substantial federal question, 333 U.S. 859, 68 S.Ct. 745, 92 L.Ed. 1138 (1948), naturopaths claimed that they had been unconstitutionally deprived of liberty and property interests by a Tennessee law withdrawing recognition from naturopathy as a separate branch of medicine but allowing methods used by naturopaths to be used by other licensed practitioners. The Supreme Court of Tennessee rejected these arguments and sustained the legislature's power to require that practitioners of limited branches of the healing arts obtain a general practitioner's license. 207 S.W.2d at 345. The jurisdictional statement filed with the United States Supreme Court reveals that these due process and equal protection claims were directly presented on appeal.
 
 
 15
 In Taylor v. Oklahoma, 291 P.2d 1033 (1955), Appeal dismissed for want of a substantial federal question, 352 U.S. 805, 77 S.Ct. 33, 1 L.Ed.2d 38 (1956), the Supreme Court of Oklahoma affirmed an order restraining a naturopath from practicing. All of the issues raised in the jurisdictional statement filed with the United States Supreme Court asserted the unconstitutionality of Oklahoma's regulation of the healing arts under the due process, equal protection, and privileges and immunities clauses. The naturopath argued that his calling was distinct from orthodox medicine and that the state's failure to license naturopaths hindered the development of the science and deprived the public of its right to a choice of physicians.
 
 
 16
 In Dantzler v. Callison, 230 S.C. 75, 94 S.E.2d 177, Appeal dismissed for want of a substantial federal question, 352 U.S. 939, 77 S.Ct. 263, 1 L.Ed.2d 235 (1956), the Supreme Court of South Carolina found no violation of the due process or equal protection clauses in a state statute that withdrew authorization to practice naturopathy and prescribed qualifications for former licensed naturopaths who wished to become licensed as doctors of medicine. The appeal to the United States Supreme Court asserted a deprivation of property without due process of law because the statute prohibited the practice of naturopathy by anyone, regardless of his medical qualifications. The appeal also asserted a violation of the equal protection clause on the ground that the statute made qualification as a doctor of medicine more difficult for a former naturopath than for other applicants.
 
 
 17
 In Hitchcock v. Collenberg, 140 F.Supp. 894 (D.Md.1956), Aff'd, 353 U.S. 919, 77 S.Ct. 679, 1 L.Ed.2d 718 (1957), a three-judge district court sustained Maryland's Medical Practice Act against federal constitutional attacks. On appeal to the United States Supreme Court, the statute was challenged as violating the equal protection and due process clauses because naturopaths were required to pass examinations in non-naturopathic subjects to qualify to practice naturopathy and because exclusive control over naturopaths was conferred on their medical competitors. Violations of anti-trust laws were asserted on the grounds that the Maryland statute established orthodox medicine as the preferred state system of healing and curbed the progress of the art of health care. The naturopaths also urged that the statute interfered with the rights of patients to choose a mode of treatment, that it unconstitutionally suppressed the advancement of the science of naturopathy, and that the state's police power extended only to regulating naturopathy not to banning it. In its summary affirmance the Supreme Court cited Taylor v. Oklahoma, 352 U.S. 805, 77 S.Ct. 33, 1 L.Ed.2d 38 (1956); Dantzler v. Callison, 352 U.S. 939, 77 S.Ct. 263, 1 L.Ed.2d 235 (1956), and Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889).
 
 
 18
 In State v. Errington, 355 S.W.2d 952, Appeal dismissed for want of a substantial federal question, 371 U.S. 3, 83 S.Ct. 27, 9 L.Ed.2d 48 (1962), the Supreme Court of Missouri relied on Hitchcock v. Collenberg, 140 F.Supp. 894 (D.Md.1956), and the summary affirmance of that case by the Supreme Court in upholding the conviction of a self-proclaimed naturopath for practicing medicine without a license. On appeal to the United States Supreme Court, the naturopath asserted violations of the due process and equal protection clauses on the following grounds: the Missouri statute improperly defined the practice of medicine to include naturopathy; the statute suppressed the practice of naturopathy; the statute required naturopaths to qualify in non-naturopathic subjects to become licensed in the healing arts; and the statute conferred exclusive jurisdiction over naturopaths on their medical competitors. He also argued that the first amendment right of patients to select a mode of treatment was abridged by the statute.
 
 
 19
 In Stuart v. Wilson, 211 F.Supp. 700 (N.D.Tex.1962), Aff'd, 371 U.S. 576, 83 S.Ct. 547, 9 L.Ed.2d 537 (1963), a three-judge district court held that the Texas Medical Practice Act's licensing requirements were directly and reasonably related to the practice of medicine in general and to naturopathy in particular. The court also held that the act as administered violated no constitutional right of the naturopaths. On appeal to the Supreme Court, the naturopaths challenged the constitutionality of requiring persons who wished to practice naturopathy to obtain a license to practice orthodox medicine and the legitimacy of the state's definition of the practice of medicine to include the practice of naturopathy. They asserted that the state created an illegal monopoly by restricting medical practice to orthodox medicine. They alleged additional constitutional deprivations because the state conferred exclusive control over naturopaths on their medical competitors and restricted the rights of citizens who desired naturopathic treatment. They also argued that the board of medical examiners, which was composed entirely of medical doctors, was not competent to judge the qualifications of naturopaths.
 
 
 20
 In Beck v. McLeod, 240 F.Supp. 708 (D.S.C.1965), Aff'd, 382 U.S. 454, 86 S.Ct. 645, 15 L.Ed.2d 522 (1966), a three-judge district court relied on Dantzler v. Callison, 230 S.C. 75, 94 S.E.2d 177, Appeal dismissed for want of a substantial federal question, 352 U.S. 939, 77 S.Ct. 263, 1 L.Ed.2d 235 (1956), to dismiss a complaint challenging the constitutionality of South Carolina's statute which abolished the practice of naturopathy and established requirements for former naturopaths who wished to become licensed physicians. The district court based dismissal on the lack of a substantial federal question. On appeal to the Supreme Court, the naturopaths questioned the binding precedential effect of Dantzler and asserted violations of the due process clause because the statute set unreasonable qualifications for licensing, discriminated in its licensing requirements among classes of the healing arts, and established requirements bearing no reasonable relation to the knowledge necessary for the practice of naturopathy.
 
 IV
 
 21
 We conclude that the naturopaths' various constitutional claims depend on a single underlying contention: that a state must recognize naturopathy as a discipline distinct from the orthodox practice of medicine whose practitioners are entitled to licensing requirements different from those imposed on other physicians. If the naturopaths are correct in this assertion, their other contentions may well have merit, but if it fails, all of their claims must fall with it. In light of the decisions of the Supreme Court that we have reviewed, we find that the naturopaths' basic claim has been firmly, repeatedly, and authoritatively rejected. Because we discern nothing indicating that their position, once labeled insubstantial, should now be considered otherwise, we affirm the judgments of the district court.
 
 
 
 [1]
 Jurisdiction is alleged to exist under 28 U.S.C. §§ 1331(a) (federal question); 1346(a)(2) (United States as a defendant); 2201 (declaratory judgments); and 42 U.S.C. § 1983 (civil rights). The complaint also alleges pendent jurisdiction over the states and their agencies
 
 
 [2]
 After the state and county defendants were dismissed from the Wyoming and South Carolina actions, these cases were transferred to the United States District Court for the District of Maryland by order of the Judicial Panel on Multidistrict Litigation. In re Practice of Naturopathy Litigation, 434 F.Supp. 1240 (Jud.Pan.Mult.Lit., 1977). The dismissals were subsequently certified for appeal under Federal Rule of Civil Procedure 54(b)