Gerald M. Reisinger, N.D., Petitioner *v.* Commonwealth of Pennsylvania, State Board of Medical Education and Licensure, Commissioner of Professional and Occupational Affairs, Department of State, Respondents.

Argued February 8, 1979, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*Frank O. Walther,* for petitioner.

*William C. Kennedy,* Assistant Attorney General, for respondent.

OPINION BY JUDGE BLATT, April 10, 1979:

Gerald M. Reisinger (petitioner) appeals here from an order of the State Board of Medical Education and

Licensure (Board) denying him a license to practice Naturopathy or Drugless Therapy.[1]

The petitioner received a doctor's degree in chiropractic medicine from Palmer College of Chiropractic Medicine in 1974 and a doctor's degree in Naturopathy from the National College of Naturopathic Medicine in 1975. In December 1974, he directed a written inquiry to the Board regarding licensure requirements for Naturopaths or Drugless Therapists and he was notified by the Board Secretary in February of 1975 that the Board had no jurisdiction under The Medical Practice Act of 1974[2] (Act) to license Drugless Therapists. In March 1976, he requested an opportunity to appear before the Board to demonstrate why he ought to be examined and licensed as a Drugless Therapist, and a formal hearing was begun before the Board on September 1, 1976. At that time the head administrator of the National College of Naturopathic Medicine testified as to the educational program of that institution, the petitioner was examined on his

---

[1] The United States Department of Labor has defined "Naturopathy" as follows:

DOCTOR, NATUROPATHIC (*Medical Ser.*) 079.108. Naturopathic Physician. Diagnoses, treats, and cares for patients, using a system of practice that bases its treatment of all physiological, psychological, and mechanical methods, such as air, water, light, heat, earth phytotherapy, food and herb therapy, psychotherapy, electro therapy, physiotherapy, minor and orificial surgery mechano therapy, naturopathic corrections and manipulation, and all natural methods and modalities, together with natural medicines, natural processed foods, and herbs and nature's remedies. Excludes major surgery, therapeutic use of X-ray and radium and use of drugs, except those assimilable substances containing elements or components of bodily tissues and are physiologically compatible to body processes for maintenance of life.

U. S. Dep't of Labor, I Dictionary of Occupational Titles, 214-215.

[2] Act of July 20, 1974, P.L. 551, *as amended*, 63 P.S. §421.1 et seq.

qualifications and expertise in dealing with specific medical problems, and the Board Secretary testified that no Drugless Therapists had been licensed since 1951. The hearing was then continued until October 21, 1976 when the Commonwealth presented Dr. Jack Ederken as a witness, a physician who had worked on a report for the Congress regarding *Independent Practitioners Under Medicare.* Dr. Ederken testified as to the conclusions reached in his report regarding the state of the art of Naturopathy today and the reasons for denying payment of Medicare benefits to Naturopaths. The petitioner presented another witness whose testimony related to the role of nutrition in medical care, and the record was then closed. After a review of the notes of testimony, the Board voted unanimously to deny licensure to the petitioner as a Drugless Therapist or Naturopath, and issued its order to this effect on September 14, 1977. This appeal followed.

Our scope of review is, of course, limited to a determination of whether or not constitutional rights were violated, and as to whether or not the adjudication was in accordance with law and supported by substantial evidence. 2 Pa. C.S. §704.

The Board maintains that before the petitioner can practice Naturopathy in the Commonwealth, he must first obtain a license to practice medicine, for which this petitioner is not qualified to receive. Its position is based on a literal reading of the definition of medicine found in the Act and the conclusion that the practice of Naturopathy is incorporated therein. Medicine is defined in Section 2 of the Act as follows:

> (3) 'Medicine and surgery'. The art and science having for its object the cure of the diseases of and the preservation of the health of man including all practice of the healing art with or without drugs. . . .

63 P.S. §421.2.

The petitioner would concede that he is not qualified under the statute to be licensed to practice medicine. He argues, however, that he should be licensed as a "drugless therapist" pursuant to Section 4(4) of the Act which provides:

> (4) Midwifery, Physical Therapy and Drugless Therapy. Nothing in this act shall be constructed to preclude the board from continuing to license, register and regulate persons engaged in the practice of midwifery and/or physical therapy or to register or regulate persons engaged in the practice of drugless therapy in accordance with existing rules and regulations lawfully promulgated by said board prior to the effective date of this act.

63 P.S. §421.4.

With respect to this contention, the Board argues that it lacks the authority under the section of the Act quoted to *license* drugless therapists and that, in the alternative, the petitioner is not a Drugless Therapist as envisioned by the Act. In support of its first argument, the Board contends that the absence of the word "license" before the grant of authority indicates a legislative intent that the Board shall not license (*i.e.*, grant a license, as distinct from "continuing to license") such persons. It argues that this interpretation is supported by the inclusion in the same section of the clear power to license midwives and physical therapists, and we agree. The obvious exclusion of the word "license" with respect to Drugless Therapists clearly indicates a legislative intent that such a procedure is no longer to be available.

Having determined that the Board lacks the authority now to license Drugless Therapists,[3] we need

---

[3] Under the prior law the Board had jurisdiction and licensure responsibility for all drugless therapists. In 1951 when the Chiropractic Act was passed, most applicants for licensure applied to

not reach the question of whether or not the petitioner is in fact such a therapist. We also agree that the legislature's broad and comprehensive definition of medicine includes the practice of a healing art such as that advocated by the petitioner. The Naturopathic profession's own definition of their calling as "a system of treatment of human disease,"[4] clearly falls within that formulated by the legislature[5] and, therefore, we must hold that the the petitioner does not meet the licensure requirements for the practice of medicine.

Several constitutional issues concerning the Board's interpretation of the statute have also been raised by the petitioner. He first contends that to require him to qualify for an unlimited medical license

---

the Chiropractic Board. Approximately 600 drugless therapists remained licensed under the jurisdiction of the Medical Board by their own choice. Since 1951, the Medical Board has continued to register and regulate these individuals but has not examined nor licensed any new Drugless Therapists. At the present time, 111 Drugless Therapists remain registered under the Medical Board's jurisdiction.

[4] The full definition adopted by the National Association of Naturopathic Physicians is as follows:

> Naturopathy (naturopathic medicine) — A system of treatment of human disease which emphasizes assisting nature. It embraces surgery and the use of nature's agents, forces, processes, and products, and introduces them to the human body by any means that will produce health-yielding results.

National Association of Naturopathic Physicians, "Outline for Study of Services of Practitioners Performing Health Services in Independent Practice," (Report submitted to the Public Health Service by T. W. Noble, President, National Association of Naturopathic Physicians, August 1, 1968).

[5] This holding is consistent with those reached in other states where the contention that Naturopathy is a separate and distinct profession was rejected. See *Atchinson v. State*, 204 Md. 495, 105 A.2d 495 (1954); *Hahn v. State*, 78 Wyo. 258, 322 P.2d 896 (1958).

in order to practice his more limited profession violates rights guaranteed to him by the Fourteenth Amendment to the United States Constitution and by Article One, Section 1 of the Constitution of Pennsylvania. Specifically, he argues that he has a constitutional property right to practice his profession which is being denied to him in an unreasonable and discriminatory manner by the Commonwealth. While it is true that the right to practice a profession has been characterized as a property right with constitutional protection, *Schware v. Board of Bar Examiners,* 353 U.S. 232 (1957), it is equally true that there exists no vested right to practice medicine, rather it is a conditional right subordinate to the police power of the state to protect and preserve the public health. *Watson v. Maryland,* 218 U.S. 173 (1909). It is well established that a state may set reasonable standards for determining the qualifications of those who hold themselves out as practitioners of the healing arts and may also grant to an administrative body the authority to enforce standards. *New Jersey Chiropractic Ass'n v. State Board,* 79 F.Supp. 327 (D.N.J. 1948). As long as the requirement of learning, skill and examination for obtaining a license to practice medicine bear a direct, substantial and reasonable relationship to the practice of medicine, a Naturopath or anyone else intending to practice the act of healing can be required to meet the standards set for the medical profession. *Stuart v. Wilson,* 211 F. Supp. 700 (N.D. Texas 1962), *aff'd sub nom. Stuart v. Carr,* 371 U.S. 576 (1963). Because we believe that the Board has enacted regulations which are reasonable in light of its duty to protect the public health and welfare, we must conclude that the petitioner has not been denied any constitutional rights.

The petitioner next contends that he was denied due process of law when the decision regarding his

license request was made by a Board dominated by allopathic[6] doctors who, he alleges, are inherently biased against people in his particular profession. He contends that these doctors have a pecuniary interest in denying him a license to practice medicine in competition with them, and he relies on the United States Supreme Court's decision in *Gibson v. Berryhill,* 411 U.S. 564 (1973) where the Court held that the Alabama State Board of Optometry, which was comprised solely of optometrists in private practice, has acted with impermissible personal interest in revoking the licenses of all optometrists in the state who were employed by business corporations (a group which comprised nearly half of all the optometrists practicing in Alabama). We believe, however, that the case presently before us is clearly distinguishable from *Gibson.* In the first place, the Board here is not comprised *solely* of allopathic doctors, but is rather made up of five medical doctors, a person knowledgeable in the field of allied health services, a person representing the public at large, the Secretary of Health, an allopathic doctor, and the Commissioner of Professional and Occupational Affairs.[7] Second, and more important, is the fact that the petitioner has not shown that the doctors on the Board would receive so great a pecuniary benefit from denying the petitioner a license so as to create an impermissible

---

[6] Webster's New Collegiate Dictionary contains the following definition of allopathy:

> 1: A system of medical practice that combats disease by treatments that produce effects different from those produced by the disease treated. 2: A system of medical practice making use of all measures proved of value in treatment of disease: Conventional medicine exclusive of homeopathy.

Webster's New Collegiate Dictionary 31 (1976).

[7] Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §122.

personal interest on their part. In *Gibson* the action of the Alabama Optometry Board in revoking the licenses of nearly half of the optometrists in the state would clearly have resulted in some personal benefit for all other optometrists in private practice and possibly for the members of the Board. There is no such benefit to be gained here.

The petitioner further contends that the decision of the Board denies to the citizens of Pennsylvania their constitutional right of freedom of choice in medical treatment. As we see it, however, the Commonwealth is not prohibiting the practice of Naturopathy but merely assuring that those who practice it are medically competent to do so. There is nothing in the Act which would prohibit a person duly licensed to practice medicine from utilizing Naturopathic methods if he so desires.

Finally, we are unpersuaded by the facts as pointed out by the petitioner, that other states have recognized Naturopathy as a separate healing art and have provided licensing procedures for those desiring to practice it. As the district court in *Hitchcock v. Collenberg,* 140 F. Supp. 894, 900 (D. Md. 1956), *aff'd* 353 U.S. 919 (1957) stated:

The fact that one or more states may have lowered the bars which protect the public from ill-trained practitioners of the healing art does not render other states impotent to protect their own residents. Regulations of a particular trade or business essential to the public health and safety are within the legislative capacity of the state in the exercise of its police power, and unless such regulations are so unreasonable and extravagant as to interfere with property and personal rights of citizens unnecessarily and arbitrarily, they are within the power of the

state. Williams v. State of Arkansas, 217 U.S. 79, 30 S.Ct. 493, 54 L.Ed. 673.

For the foregoing reasons, the decision of the Board is affirmed.

ORDER

AND Now, this 10th day of April, 1979, the Order of the State Board of Medical Education and Licensure in the Matter of the Application of Gerald M. Reisinger, N.D. for a License to practice Naturopathy is affirmed.