568 A.2d 1365

**J.H. FEINGOLD, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, STATE BOARD OF CHIROPRACTIC, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 1989.

Decided Jan. 22, 1990.

Anthony L. Cianfrani, for petitioner.

Deborah B. Eskin, with her, April L. McClain, State Bd. of Chiropractic, Joyce McKeever, Chief Counsel, Bureau of Professional and Occupational Affairs, and Velma A. Boozer, Chief Counsel, Dept. of State, for respondent.

Before DOYLE, BARRY and PALLADINO, JJ.

DOYLE, Judge.

Before us for consideration is a petition for review filed by J.H. Feingold from an order of the Pennsylvania State Board of Chiropractic (Board) which found that Feingold had practiced chiropractic without a license and imposed a civil penalty of one thousand dollars ($1,000). We affirm.

On March 19, 1987, an undercover investigator employed by the Pennsylvania Bureau of Professional and Occupational Affairs (Bureau) visited Feingold's office, complaining of lower back pain. In the office there was a sign affixed to the wall which enumerated the types of treatments given, the procedures performed, and the prices therefor, which included, "Exams, natural health care, spinal alignment, body alignment, homeopathic repertorization, botanical medicine, herbal therapy, hydrotherapy, colonic irrigation, nutrition balancing, diet and weight control, accupressure." Feingold examined the investigator by observing him both in a standing position and while lying on an examination table, and Feingold thereafter manipulated his spine, back, and legs. The manipulation consisted of Feingold crossing one of the investigator's legs over the other, and further placing his knee behind the investigator's knee while his hands were on the investigator's arms and shoulders. While in this position, with Feingold pressing

downward, a "pop" sounded from the investigator's back. Feingold repeated the maneuver from the other side, which produced another "pop." The treatment was completed first by pulling the investigator's feet while holding him by the ankles, and then by pulling him under the arms. The investigator paid for the treatment and left Feingold's office.

Subsequently, an Administrative Complaint and Order to Show Cause was issued jointly by the Board and by the State Board of Medicine, which alleged that Feingold had violated the Chiropractic Practice Act (Act), Act of December 16, 1986, P.L. 1646, 63 P.S. §§ 625.101–625.1106, by engaging in chiropractic practice while unlicensed under the Act, and that he violated the Medical Practice Act of 1985 (Medical Act), Act of December 20, 1985, P.L. 457, as amended, 63 P.S. §§ 422.1–422.45, by, inter alia, practicing medicine without a license. Following a hearing, the charges were sustained by the hearing examiner and Feingold appealed to the Board and to the State Board of Medicine. Thereafter, the Board entered the order on appeal in this case.[1]

Before this Court, Feingold, who holds himself out to be a naturopathic physician rather than a chiropractic physician, contends that he was denied equal protection of the law because, unlike those licensed in chiropractic, he was denied an exemption from the requirement that an unlimited medical license be obtained in order to practice his more limited profession of naturopathy, even though no real distinction exists between naturopathy and chiropractic.[2] We refuse to be led down this path however, and conclude that Feingold's argument is actually a contention that his right to equal

1. The State Board of Medicine also issued an order which affirmed the hearing examiner's conclusion that Feingold had violated the Medical Act, and imposed a two hundred and fifty dollar ($250) civil penalty. Feingold has not appealed that order.

2. Feingold raised this issue below, and the Board properly refused to consider it. It is well-settled that it is not within the province of an agency to determine the constitutionality of its enabling act. Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County, 459 Pa. 268, 328 A.2d 819 (1974).

protection is abridged by the General Assembly's decision not to provide a separate licensing authority for naturopathic physicians. However, before addressing this question, we must first determine whether the Board's order is supported by substantial evidence and is consistent with the law.

■ It is undisputed that Feingold does not hold a license in this Commonwealth to practice chiropractic or any other healing art. In this case, the narrow issue before the Board was whether Feingold was practicing chiropractic without a license when he diagnosed and treated the Bureau investigator. Chiropractic is defined by Section 102 of the Act, 63 P.S. § 625.102, as follows:

"**Chiropractic.**" A branch of the healing arts dealing with the relationship between the articulations of the vertebral column, as well as other articulations, and the neuro-musculo-skeletal system and role of these relationships in the restoration and maintenance of health. The term shall include systems of locating misaligned or displaced vertebrae of the human spine and other articulations; the examination preparatory to the adjustment or manipulation of such misaligned or displaced vertebrae and other articulations; the adjustment or manipulation of such misaligned or displaced vertebrae and other articulations; the furnishing of necessary patient care for the restoration and maintenance of health; and the use of board-approved scientific instruments of analysis, including X-ray. The term shall also include diagnosis, provided that such diagnosis is necessary to determine the nature and appropriateness of chiropractic treatment; the use of adjunctive procedures in treating misaligned or dislocated vertebrae or articulations and related conditions of the nervous system, provided that, after January 1, 1988, the licensee must be certified in accordance with this act to use adjunctive procedures; and nutritional counseling, provided that nothing herein shall be construed to require licensure as a chiropractor in order to engage in nutritional counseling. The term shall not

include the practice of obstetrics or gynecology, the reduction of fractures or major dislocations, or the use of drugs or surgery.

Although Feingold contended that he practiced naturopathy rather than chiropractic, the Board, based upon the definition of chiropractic in Section 102 of the Act and upon the collective expertise of its practitioner members, concluded that Feingold's treatment of the Bureau investigator constituted the practice of chiropractic. The Board noted that, "Chiropractic by any other name is still chiropractic. Both [Feingold] and the Board are bound by the statutory definition of chiropractic, and that definition clearly includes [Feingold's] mode of practice." Based on our review of the record, we hold that the Board's finding is supported by substantial evidence, and that the penalty imposed is in accordance with Section 701 of the Act, 63 P.S. § 625.701. Furthermore, Feingold, at page 11 in his brief to this Court, asserts that a "[c]omparison of the statutory definition of chiropractic and the United States Department of Labor's definition of naturopathy shows no real difference between chiropractic and naturopathy," [3] and at page 15 of his brief, that in this case, "[t]he record contains no evidence of a real distinction between naturopaths and chiropractors in terms of scope of practice, required education or training." Clearly, therefore, the Board arrived at a correct finding.

 We turn then to the constitutional issue. Here, Feingold contends that because there is "no real difference"

3. Feingold's brief sets forth the United States Department of Labor's definition of naturopathy as follows:

Doctor, Naturopathic, *Naturopathic Physician.* A healer; diagnoses, treats and cares for patients, using a system of practice that bases its treatment of all physiological functions and abnormal conditions on natural laws governing the body; utilizing physiological, psychological, and mechanical methods, such as air; water, light, heat, earth, phytotherapy, food and herb therapy, psychotherapy, electrotherapy, physiotherapy, minor and orificial surgery, mechanpatherapy, naturopathic corrections and manipulation, and all natural methods or modalities, together with natural medicines, natural processed foods, and herbs and nature's remedies. Naturopathy excludes use of major surgery, X-ray and radium for therapeutic purposes, and drugs.

between chiropractic and naturopathy and, that because chiropractors are exempted from the operation of the Medical Act and are not required to obtain an unlimited license, the Medical Act unconstitutionally denies equal protection to naturopaths by not granting them similar privileges.[4]

This Court has previously addressed a similar equal protection challenge in *Reisinger v. State Board of Medical Education and Licensure*, 41 Pa.Commonwealth Ct. 553, 399 A.2d 1160 (1979). Therein, Judge Blatt wrote the following:

> While it is true that the right to practice a profession has been characterized as a property right with constitutional protection, it is equally true that there exists no vested right to practice medicine, rather it is a conditional right subordinate to the police power of the state to protect and preserve the public health. It is well established that a state may set reasonable standards for determining the qualifications of those who hold themselves out as practitioners of the healing arts and may also grant to an administrative body the authority to enforce standards. As long as the requirement of learning, skill and examination for obtaining a license to practice medicine bear a direct, substantial and reasonable relationship to the practice of medicine, *a Naturopath or anyone else intending to practice the act of healing can be required to meet the standards set for the medical profession.* Because we believe that the Board has enacted regulations which are reasonable in light of its duty to protect the public health and welfare, we must conclude that the petitioner has not been denied any constitutional rights.

*Id.*, 41 Pa.Commonwealth Ct. at 559, 399 A.2d at 1164 (citations omitted) (emphasis added).

We believe that the foregoing language makes it clear that the General Assembly is not constitutionally required

---

**4.** Where there is an equal protection challenge in an employment licensure matter, the relevant inquiry is whether the classification bears some rational relationship to a permissible state objective. *McCoy v. State Board of Medical Education and Licensure,* 37 Pa.Commonwealth Ct. 530, 391 A.2d 723 (1978).

to enact individual statutes to cover every specialty or methodology when a particular health care practice is already regulated under an applicable statute. No action taken by the Board prevents Feingold from obtaining an unlimited medical license [5] or a chiropractic license which would permit him to practice his particular healing art within the Commonwealth. Therefore, based on the above, we hold that Feingold's equal protection argument is without merit.

Accordingly, the order of the Board is affirmed.

## ORDER

NOW, January 22, 1990, the order of the Pennsylvania State Board of Chiropractic in the above-captioned matter is affirmed.

---

**5.** We are cognizant that in *Reisinger* this Court concluded that Naturopaths were required to possess an unlimited medical license. However, in view of the fact that this conclusion was based in large part upon a definition of naturopathy adopted by the National Association of Naturopathic Physicians, which the *Reisinger* court used and which "embraces surgery," and in view of Feingold's admission that there is "no real difference" between chiropractic and his practice of naturopathy, which does *not* embrace surgery, we believe the instant case is distinguishable from *Reisinger.*