# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maria McElwee,               :
                    Petitioner       :
                                  :
            v.                   : No. 1274 C.D. 2020
                                  : ARGUED: November 15, 2021
Bureau of Professional and Occupational    :
Affairs, State Board of Veterinary Medicine, :
                    Respondent     :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**            **FILED: January 18, 2022**

        This case presents the novel issues of whether animal chiropractic is the practice of veterinary medicine under the Veterinary Medicine Practice Act ("Act" refers to the Veterinary Medicine Practice Act unless another law is indicated)[1]; whether the State Board of Veterinary Medicine ("Board" refers to the State Board of Veterinary Medicine unless another board is indicated) has jurisdiction to impose discipline upon a practitioner of animal chiropractic; and whether the Board's requirement of direct supervision by a Pennsylvania licensed veterinarian to practice animal chiropractic is a violation of substantive due process.

        Maria McElwee, D.C., petitions for review from the order of the State Board of Veterinary Medicine directing her to cease and desist from the unlicensed practice of veterinary medicine; to obtain a veterinarian license or practice under the direct supervision of a licensed veterinarian if she wishes to continue to provide

---

[1] Act of December 27, 1974, P.L. 995, *as amended*, 63 P.S. §§ 485.1-485.33.

chiropractic care to animals; and to pay a civil penalty and costs of investigation. We affirm.

The relevant factual history[2] is undisputed and can be summarized as follows. Petitioner is a chiropractor licensed by the State Board of Chiropractic. Petitioner holds herself out to the public as an "animal chiropractor" and is the owner of a practice called Critter Chiropractic, which exclusively treats animals. Information on the practice's website indicates, *inter alia*, that the care offered "[p]romotes healing and function within your animal's body"; "[r]estores function and proper communication within the body"; and "[w]orks to restore optimal muscular strength and mobility." (Stipulation of Facts ¶ 14, Agency Record "A.R." at Item 30.[3]) The practice's website states that she is a doctor of chiropractic.

Petitioner is not a veterinarian. She received a certification in veterinary chiropractic from the International Veterinary Chiropractic Association in 2014, which has been in "full force and effect at all times relevant to these proceedings." (Stipulation of Facts ¶ 7, A.R. at Item 30.) The International Veterinary Chiropractic Association is a self-regulating organization and not a governmental regulating body. To receive her certification, Petitioner successfully completed the Options for Animals College of Animal Chiropractic program in Essentials of Animal Chiropractic, including 210 hours of classroom and clinical requirements. Options for Animals offers its course to licensed chiropractors and licensed veterinarians; it does not confer a degree and considers itself a "continuing

---

[2] The hearing examiner made 93 findings of fact, including one adopting by reference 27 stipulations of fact. These were adopted in full by the Board in its final adjudication. The summary here represents an abbreviation of these findings for the sake of concision.

[3] Petitioner's "brief and reproduced record" does not actually contain a reproduction of the record, in violation of Pennsylvania Rule of Appellate Procedure 2152(a), but various exhibits offered, presumably, to support her legal position. In order to avoid unnecessarily delaying the resolution of this matter, we have been required to resort for reference to the agency's record, which is separated by numbered item but is not paginated.

2

education or postgraduate education program that confers a certificate of completion." (Final Adjudication and Order "Final A&O" at Attachment A, Proposed Adjudication and Order "Proposed A&O" at Findings of Fact "F.F." Nos. 74-75.)

Petitioner performs a "chiropractic evaluation or analyzation" of an animal, focusing on "locating subluxations and then correcting these subluxations." (Proposed A&O at F.F. No. 23.) Vertebral subluxations are "misalignment[s] of the vertebra[e][] or [] restriction[s] on the nervous system, which can be caused by either the physical, emotional, or chemical trauma of everyday life." (Proposed A&O at F.F. Nos. 55-58.) Petitioner testified that she works with the nervous system of the animal by correcting any subluxations that interfere with it. Petitioner requires that an owner seeking care for an animal fill out an intake form and provide a case history of the animal; she occasionally receives medical records or x-rays from a treating veterinarian; and she reviews any x-rays to find infusions of the spine, breaks or fractures of the spine, misalignments of the spine, or any disk space between the vertebrae.

Petitioner believes that she does not "diagnose" a vertebral subluxation, as it is her opinion that a "diagnosis" is usually for a disease. (Proposed A&O at F.F. No. 54.) After analyzing where the subluxations are, Petitioner will "make a treatment and care plan for the animal, with or without the veterinarian's input." (Proposed A&O at F.F. No. 60). To restore the vertebrae or reduce the subluxation, Petitioner performs an adjustment with her hands; usually the adjustment is the "toggle technique," which applies force to the animal. (Proposed A&O at F.F. Nos. 24 and 62.)

Petitioner does not work at any veterinary clinics or hospitals. Typically, a veterinarian is not physically present at locations where Petitioner performs services, though occasionally veterinarians are present as the owners of the

3

animals being treated. Petitioner requires owners of animals seeking her services to have the owner's veterinarian complete a consultation form which seeks authorization for her to provide chiropractic care to the owner's animal. (A.R. at Item 33, Exhibit C-2.) All animals in her care must have a veterinarian before she will work with them. Petitioner occasionally communicates with the treating veterinarians of the animals she treats about care plans and to report her findings.

In November 2017, the Commonwealth filed an order to show cause alleging that Petitioner was subject to disciplinary action under Section 9(a) of the Act, 63 P.S. § 485.9(a), because the procedures performed in her practice constituted the unlicensed practice of veterinary medicine. Petitioner filed a reply and requested a hearing. The matter was delegated to a hearing examiner at the Pennsylvania Department of State for purposes of a hearing and to file a proposed adjudication and order. After hearing, the hearing examiner issued a proposed adjudication and order concluding that the procedures performed by Petitioner constituted the unlicensed practice of veterinary medicine. Petitioner filed a brief on exceptions, opposed by the Commonwealth. The Board reviewed the matter and on November 16, 2020, issued its final adjudication and order which is currently before the Court.

On appeal, Petitioner raises five issues, styled in her brief as a "summary of argument"[4]:

1. Whether the Board has jurisdiction over Petitioner.

2. Whether the Board lacks authority to enforce its Rules of Professional Conduct against Petitioner.

---

[4] In addition to the omission of an actual reproduced record from the purported combined "brief and reproduced record," *see supra* note 3, Petitioner's brief omits a functional summary of argument in violation of Pennsylvania Rules of Appellate Procedure 2111(a)(6) and 2118. We have paraphrased the statement of issues for clarity.

4

3. Whether the General Assembly has adopted a law that regulates the practice of animal chiropractic in Pennsylvania.

4. Whether the final order issued by the Board violates Petitioner's right to substantive due process under the United States and Pennsylvania Constitutions.

5. Whether the final order will have the effect of unfairly burdening Pennsylvania consumers of animal chiropractic services, by depriving them of a choice in the care they select for their animals and causing them economic harm that is not justified by evidence-based health and safety concerns.

(Pet'r Br. at 6.)

**I. The Board has Jurisdiction over Practitioners of Animal Chiropractic and Animal Chiropractic is Subject to Current Regulatory Authority**

Petitioner's first and third issues, which may be treated together, concern whether her practice of animal chiropractic constitutes the practice of veterinary medicine, and whether the Board has authority to sanction her. Petitioner argues that animal chiropractic does not constitute the practice of veterinary medicine, depriving the Board of jurisdiction, and that because the General Assembly has not specifically provided for regulation of animal chiropractic, it is unregulated and not subject to the authority of the Board.

The definition of veterinary medicine included in Section 3 of the Act is as follows:

[T]hat branch of medicine which deals with the diagnosis, prognosis, treatment, administration, prescription, operation or *manipulation* or application of any apparatus or appliance for any disease, pain, deformity, defect, injury, wound, physical condition or mental condition requiring medication of any animal or for the prevention of or the testing for the presence of any disease.

5

63 P.S. § 485.3(9) (emphasis added). The "practice of veterinary medicine" is a separately defined term:

> "Practice of veterinary medicine" includes, but is not limited to, the practice by any person who (i) *diagnoses, treats, corrects, changes, relieves or prevents animal disease, deformity, injury or other physical, mental or dental conditions by any method or mode, including the* prescription or *administration* of any drug, medicine, biologic, apparatus, *application,* anesthetic or *other therapeutic or diagnostic substance or technique*, . . . (iv) represents himself as engaged in the practice of veterinary medicine, (v) *offers, undertakes, or holds himself out as being able to diagnose [or] treat . . . any animal disease, pain, injury, deformity, or physical condition*, . . . [or] (ix) renders advice or recommendation by any means, including the electronic transmission of data with regard to any of the above . . . .

63 P.S. § 485.3(10) (emphasis added).

Petitioner takes issue with whether her "identification of chiropractic vertebral subluxation" meets the definition of "diagnosis."[5] Petitioner then cites the definition of chiropractic provided for in Section 102 of the Chiropractic Practice Act,[6] which she contends specifically excludes elements of Petitioner's purported specialized definition of "diagnosis" under the Veterinary Practice Act.

---

[5] Petitioner asserts that a specialized definition of "diagnosis" is provided in the Act: "diagnosis . . . for any disease, pain, deformity, defect, injury, wound, physical condition or mental condition requiring medication . . . or for the prevention of or the testing for the presence of any disease." (Pet'r Br. at 7.) Notably, this "definition" of "diagnosis" is nowhere to be found in Section 3 of the Act, 63 P.S. § 485.3 (relating to definitions), or elsewhere in the Act or Board regulations, but instead appears to be an abbreviated version of the definition of veterinary medicine.

[6] Section 102 of the Chiropractic Practice Act, Act of December 16, 1986, P.L. 1646, *as amended*, 63 P.S. § 625.102 (relating to definitions). Section 102 of the Chiropractic Practice Act defines "chiropractic" specifically to exclude "the use of drugs or surgery." 63 P.S. § 625.102. *See also infra* note 8.

6

However, resort to a dictionary definition of the word "diagnosis,"[7] as suggested by the Board, would suggest that her examinations for subluxations and identification thereof functionally constitute diagnosis as it is commonly understood. Furthermore, although treatment of "subluxations" is not mentioned in the Act, the substance of the treatment for such conditions, as it is defined by Petitioner in her testimony and found by the Board as fact, is included in the definition of "veterinary medicine": "*manipulation . . . for any disease, pain, deformity, defect, injury, wound, physical condition or mental condition.*"  63 P.S. § 485.3(9) (emphasis added).  The definition of "practice of veterinary medicine" would seem to include it more generally as well: "*diagnoses, treats, corrects, changes, relieves or prevents animal disease, deformity, injury or other physical . . . conditions by any method or mode, including the . . . administration of any . . . application . . . or other therapeutic or diagnostic . . . technique.*"  63 P.S. § 485.3(10) (emphasis added).

Petitioner's assertions concerning the nature of animal chiropractic as not involving medication, not addressing disease, and not trespassing on the veterinary meaning of diagnosis or manipulation are, as the Board puts it, "cherry-picked" from very broad definitions of veterinary medicine and practice of

---

[7] The Board cites Black's Law Dictionary for the following definition of diagnosis: "1. The determination of a medical condition (such as a disease) by physical examination or by study or its symptoms.  2.  The result of such and examination or study." *Diagnosis*, Black's Law Dictionary (11th ed. 2019); *accord* definition of "diagnosis" in Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/diagnosis (last visited Jan. 14, 2022) ("1: the act of identifying a disease, illness, or problem by examining someone or something . . . 2: a statement or conclusion that describes the reason for a disease, illness or problem").

It is noted that "diagnosis" is in fact part of the practice of chiropractic under the Chiropractic Practice Act; the definition of chiropractic specifically includes "diagnosis, provided that such diagnosis is necessary to determine the nature and appropriateness of chiropractic treatment."  63 P.S. § 625.102.

veterinary medicine, that appear to encompass her practice. Were there some overlap between the Veterinary Practice Act, which permits manipulation upon animals, and the Chiropractic Practice Act, which is limited to humans,[8] we might question the Board's interpretation. *See Rosen v. State Architects Licensure Bd.*, 763 A.2d 962 (Pa. Cmwlth. 2000) (stating that "[t]he practice of engineering . . . permits engineers to design buildings, and engage in construction planning and management. The fact that the practice of architecture encompasses the same activities does not diminish the sphere of the practice of engineering"). However, here the animal-human distinction between the respective disciplines is clear-cut.

Petitioner's contention that because the General Assembly has not specifically addressed animal chiropractic it is not regulated is also unpersuasive. In *Feingold v. State Board of Chiropractic*, 568 A.2d 1365, 1368 (Pa. Cmwlth. 1990), this Court—noting no real difference between naturopathy and chiropractic as defined—stated that "the General Assembly is not constitutionally required to enact individual statutes to cover every specialty or methodology when a particular health care practice is already regulated under an applicable statute." A similar rule

---

[8] As noted by the Board, chiropractic is defined by Section 102 of the Chiropractic Practice Act, *inter alia*, as follows:

> A branch *of the healing arts* dealing with the relationship between the articulations of the vertebral column, as well as other articulations, and the neuro-musculo-skeletal system and the role of these relationships in the restoration and maintenance of health. The term shall include systems of locating misaligned or displaced vertebrae of the *human spine* and other articulations . . .

63 P.S. § 625.102 (relating to definitions) (emphasis added). While the Chiropractic Practice Act does not include a definition of "healing art," Section 1991 of the Statutory Construction Act of 1972 defines the term as follows: "[t]he science of diagnosis and treatment in any manner whatsoever of disease or any ailment of the *human* body." 1 Pa.C.S. § 1991 (relating to definitions) (emphasis added). Chiropractic would seem clearly to be limited to the diagnosis and treatment of humans using techniques specialized to that field.

pertains outside the healthcare professions. *See Justringz-Century III Mall v. State Bd. of Cosmetology*, 22 A.3d 298 (Pa. Cmwlth. 2011) (holding that a cosmetology board license is required to practice eyebrow threading because it constitutes hair removal); *Diwara v. State Bd. of Cosmetology,* 852 A.2d 1279 (Pa. Cmwlth. 2004) (same regarding natural hair braiding as arrangement of human hair).

The General Assembly may require those who practice an occupation to obtain a license and may designate the appropriate licensing authority or authorities. In *Green v. State Board of Veterinary Medicine*, 116 A.3d 1164 (Pa. Cmwlth. 2015), we sustained a demurrer to an original jurisdiction action against the State Board of Veterinary Medicine challenging its requirement that to perform acupuncture on animals a person must be licensed by the State Board of Medicine, the State Board of Osteopathic Medicine, or the State Board of Veterinary Medicine, as required by the specific language of the Acupuncture Practice Act.[9] Similar to the situation here, the petitioner had extensive training in the medical technique she desired to practice and Green was actually licensed to perform acupuncture in Maryland. Nonetheless, she was not licensed by any of the requisite agencies in Pennsylvania, and we agreed with the Board that the licensing requirement was valid and applicable.

## II. Board Authority to Enforce Rules of Professional Conduct against Licensees of Other Boards

As her second issue, Petitioner argues that the Board lacks authority to enforce the Rules of Professional Conduct for Veterinarians, 49 Pa. Code § 31.21, against her. The Board's order states that if she wishes to continue to provide chiropractic care of animals, she must either become a licensed veterinarian or

---

[9] Act of February 14, 1986, P.L. 2, *as amended*, 63 P.S. §§ 1801-1806.1.

"provide chiropractic care to animals only while under the direct supervision of a Pennsylvania-licensed veterinarian who is on the premises and easily and quickly available to assist, in accordance with the [Act] and the Board's regulations." (Bd. Final A&O, Order at 1.) Petitioner asserts that the order states that the regulation defining "direct veterinary supervision" at 49 Pa. Code § 31.1 (relating to definitions) applies to her; the order does not state this, but the definition in question was amended on December 7, 2019, effective December 28, 2019, to apply to "other licensed professionals," 49 Pa.B. 7586 (December 7, 2019).[10] Thus, prospectively,

---

[10] Section 31.1 of the Board's regulations currently define "direct veterinary supervision" as follows:

> A veterinarian has given either oral or written instructions to the certified veterinary technician, veterinary assistant, or other licensed professional as set forth in Principle 6(b) of [Section] 31.21 (relating to Rules of Professional Conduct for Veterinarians), and the veterinarian is on the premises and is easily and quickly available to assist the certified veterinary technician, veterinary assistant or other licensed professional.

49 Pa. Code § 31.1 (relating to definitions). In its final rulemaking, the Board stated as follows:

> Additionally, by amending the definition of "direct veterinary supervision" in [Section] 31.1 (relating to definitions), this final-form rulemaking clarifies the level of supervision required under [Section] 31.21 (relating to Rules of Professional Conduct for Veterinarians), Principle 6(b) regarding professional relationships, which allows veterinarians to seek the assistance of other licensed professionals to enhance the quality of veterinary medical services provided and which requires other licensed professionals to be under the direct supervision of the attending veterinarian when providing services to animals. In [Section] 31.38 (relating to code of ethics for certified veterinary technicians), this final-form rulemaking also sets out further ethical conduct rules for certified veterinary technicians that mirror existing provisions for veterinarians in [Section] 31.21.

49 Pa.B. 7586 (amended Dec. 7, 2019, effective Dec. 28, 2019).

10

Principle 6(b) of the Rules of Professional Conduct requires that direct veterinary supervision would be required for a *veterinarian* to seek the assistance of a chiropractor:

> Veterinarians may seek, through consultation, the assistance of other licensed professionals, including chiropractors, . . . when it appears that chiropractic . . . procedures will enhance the quality of veterinary care. Chiropractic . . . procedures shall only be performed upon animals by chiropractors . . . in conjunction with the practice of veterinary medicine and under the direct supervision of a veterinarian, subject to a limitation provided by law or regulation.

49 Pa. Code § 31.21 at Principle 6(b).

Petitioner makes several assertions concerning the applicability and wisdom of Principle 6(b), but the main thrust of her argument seems to be that the Chiropractic Practice Act does not require any supervision by a veterinarian to perform chiropractic services and that Principle 6(b) applies only to veterinarians.[11] Petitioner further argues that Principle 6(b) constitutes an unconstitutional unauthorized expansion of the Board's authority granted by the General Assembly.

The Board concedes that Principle 6(b) applies only to veterinarians but denies that it has tried to enforce its Rules of Professional Conduct against Petitioner. The Board points out that Petitioner was disciplined not under Principle 6(b), but

---

[11] Petitioner also asserts that such a level of supervision is unnecessary for another licensed professional; that a veterinarian, not trained in chiropractic, would provide no useful supervision; that Principle 6(b) applies only to veterinarians, and not to other professionals consulted under Principle 6(b); that the phrase "direct supervision" in Principle 6(b) is capable of multiple reasonable interpretations and is therefore impermissibly ambiguous; that Principle 6(b) does not contain the phrase "on-premises"; and that the final clause of Principle 6(b) provides that it is limited by "law or regulation" and that the Chiropractic Practice Act provides for exclusive jurisdiction over the practice of chiropractic. (*See* Pet'r Br. at 10-15.)

11

under Section 9(a) of the Act, 63 P.S. § 485.9(a).[12]  The Board nevertheless states that Principle 6(b)'s "tenets are available to [Petitioner], and other similarly situated individuals who may find themselves prosecuted for the unlicensed practice of veterinary medicine" (Bd. Br. at 19); essentially, the Board contends that Principle 6(b) constitutes a shield for those like Petitioner, not a sword to punish them.  Simply put, the Board's interpretation operates to her benefit and were we to accept her invitation to hold that the Board lacks this authority, she could not practice chiropractic on animals at all.  We agree that the Board cannot sanction persons who are not licensed veterinarians for violating their Rules of Professional Conduct,[13] but as noted above, the Board did not do so.  It simply pointed out that the necessary

---

[12] Section 9(a) provides as follows:

> Any person wishing to practice veterinary medicine in this State shall obtain a license from the board and maintain registration. Unless such person shall have obtained such a license it shall be unlawful for him or her to practice veterinary medicine as defined herein and if he or she shall so practice he or she shall be deemed to have violated the provisions of this act.

63 P.S. § 485.9(a).  Imposition of fines and costs of investigation was under Section 28(c) of the Act, 63 P.S. § 485.28(c) (providing for fines), and Section 5(b)(4) of what is known as Act 48, Act of July 2, 1993, P.L. 345, *as amended*, 63 P.S. § 2205(b)(4) and (5), [repealed by Section 3(2) of the Act of July 1, 2020, P.L. 575.]  The substance of Section 5 of Act 48 has been replaced by 63 Pa.C.S. § 3108 (relating to civil penalties).

[13] The Preamble to the Rules of Professional Conduct state that they apply only to veterinarians.  It provides, in pertinent part, as follows:

> The Board is empowered under section 5(2) of the act (63 P. S. § 485.5(2)) to adopt rules and regulations of professional conduct appropriate to establish and maintain a high standard of integrity, skill and practice in the profession of veterinary medicine . . . The Board therefore adopts this professional conduct code for veterinarians practicing veterinary medicine in this Commonwealth.

49 Pa. Code § 31.21 at Preamble.

12

implication of Principle 6(b) is to open a limited window of opportunity for the sort of practice in which Petitioner seeks to engage.

## III. The Board's Order does not Violate Substantive Due Process Protections

Next, Petitioner argues that the Board's Final Order violates her right to substantive due process under the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, and article I, sections 1, 9, and 11 of the Pennsylvania Constitution, Pa. Const. art. I, §§ 1, 9, and 11. Petitioner asserts that the curtailment of rights is overly broad, or "patently beyond the necessities of the case." She argues that the only purpose of the Act is public protection[14] and that she is being punished in the absence of an applicable law, violating due process.

For the reasons stated above, we have found that the Board did establish a violation of law, and we see no due process violation in its application here. While Petitioner raises arguable concerns regarding the policy value of the application of the Act in her circumstance, such concerns must be addressed to the General Assembly. Even if we had all the information necessary to evaluate the benefits and risks of the type of practice in which Petitioner engages, which we do not, it is not

---

[14] Section 2 of the Act provides as follows:

> It is hereby declared that the practice of veterinary medicine is a privilege which is granted by legislative authority in the interest of the public health, safety and welfare and to protect the public from being misled by incompetent, unscrupulous and unauthorized persons and from unprofessional or illegal practices by persons licensed to practice veterinary medicine. This [A]ct is enacted in the interest of society, health, safety and welfare of Pennsylvanians.

63 P.S. § 485.2 (relating to legislative intent and purpose).

13

within the purview of this Court to second guess the policy decisions of the legislature.

## IV. Economic Harm to Pennsylvania Consumers of Animal Chiropractic Services

As her final issue, Petitioner argues that clients of animal chiropractors would suffer if they are forced to forego such services or go to the added expense of paying a veterinarian to "supervise" them, when a veterinarian is not qualified or willing to provide such supervision. Petitioner further cites opinions of the Federal Trade Commission arguing against regulation of animal massage therapy. She then argues that sanctioning her constitutes anti-competitive activity under the Supreme Court's landmark ruling applying antitrust regulation in the arena of professional licensure, *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 574 U.S. 494 (2015).

As noted above, policy arguments concerning the effects of our Commonwealth's scheme of regulatory licensure must be addressed to the General Assembly, rather than the Board or the courts. Further, the interests and policy considerations advanced under federal antitrust principles (insuring competition) are substantially different than those of a professional licensure board (protecting the public welfare). *See Walker Pontiac, Inc. v. State Bd. of Vehicle Mfrs., Dealers and Salespersons*, 582 A.2d 410 (Pa. Cmwlth. 1990).[15]

We do not doubt that Petitioner has acted with a good faith belief that her practice is lawful and there is no question that she has extensive training in the particular treatments which she performs. Based on the information concerning her

---

[15] Finally, neither the Board nor this Court has the authority to adjudicate claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, which is vested exclusively in the federal courts. *Pa. Auto. Ass'n v. State Bd. of Vehicle Mfrs., Dealers and Salespersons*, 550 A.2d 1041, 1045 (Pa. Cmwlth. 1988).

14

certification from the International Veterinary Chiropractic Association and her studies at the Options for Animals College of Animal Chiropractic, it would appear clear that her situation is hardly unique. We would urge the General Assembly to consider regulating this type of practice. However, neither this Court nor the Board can overlook the clear statutory requirements presently existing. For these reasons, we must affirm the order of the Board.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maria McElwee,                                        :
                    Petitioner                    :
                                        :
                  v.                              : No. 1274 C.D. 2020
                                          :
Bureau of Professional and Occupational    :
Affairs, State Board of Veterinary Medicine,:
                    Respondent                    :

# **O R D E R**

AND NOW, this 18th day of January, 2022, the order of the State Board of Veterinary Medicine is AFFIRMED.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maria McElwee,                         :
                    Petitioner        :
                                      :   No.  1274 C.D. 2020
        v.                            :
                                      :   Argued:  November 15, 2021
Bureau of Professional and            :
Occupational Affairs, State Board of  :
Veterinary Medicine,                  :
                    Respondent        :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


DISSENTING OPINION
BY JUDGE McCULLOUGH                              FILED:  January 18, 2022


        Section 3 of the Veterinary Medicine Practice Act (Act)[1] defines
"veterinary medicine" to "mean[] that branch of medicine which deals with the
diagnosis, prognosis, treatment, administration, prescription, operation **or**
manipulation or application of any apparatus or appliance **for any** disease, pain,
deformity, defect, injury, wound, physical condition or mental condition **requiring
medication of any animal or for the prevention of or the testing for the presence
of any disease**."  63 P.S. §485.3(9) (emphasis added).

        Here, Maria McElwee, D.C., (Petitioner) is licensed to practice as a
chiropractor and has performed a chiropractic procedure on animals, namely
"vertebral subluxations."  In short, this procedure entails the physical adjustment of
an animal's misaligned vertebral column or some other condition involving the

---

[1] Act of December 27, 1974, P.L. 995, *as amended*, 63 P.S. §§485.1-485.33.

animal's neuro-musculo-skeletal system. *See McElwee v. Bureau of Professional and Occupational Affairs, State Board of Veterinary Medicine*, __ A.3d __, __ (Pa. Cmwlth., No. 1274 C.D. 2020, filed January 18, 2022), slip op. at 2-3. To me, the Majority, in concluding that Petitioner has engaged in the profession of "veterinary medicine," erroneously interprets section 3 by parsing it in a manner that dissects the phrase, "manipulation . . . for any disease, pain, deformity, defect, injury, wound, physical condition," separate and apart from the statutory provision as a whole. *See id.*, slip op. at 7-8; *Pennsylvania Gaming Control Board v. Office of Open Records*, 103 A.3d 1276, 1285 (Pa. 2014) (reiterating that "statutory language must be read in context, that is, in ascertaining legislative intent, every portion of statutory language is to be read together and in conjunction with the remaining statutory language[] and construed with reference to the entire statute as a whole"). In so doing, the Majority overlooks the final, qualifying clause of the statute, "requiring medication of any animal or for the prevention of or the testing for the presence of any disease."

Put differently, section 3 indicates the General Assembly's intent that, in order for an individual to be in the profession of "veterinary medicine," that individual must, *first*, perform traditional medical treatment or a medically-oriented diagnostic procedure and, *second*, the medical treatment or diagnostic procedure must directly relate to a medical condition with symptomology such as "pain, deformity, defect, injury, [or] wound." Indeed, the disjunctive "or" in the prefatory clause distinguishes the methods, techniques, and procedures that are commonly known in the field of veterinary medicine, including an "operation," with the medicinal use of physical force ("manipulation") or the physical "application of any apparatus or appliance" to further the well being of an animal; thus, the prefatory language of the statute clearly marks or creates two routes, either of which must

PAM - 2

initially be traveled before an individual can be deemed to be in the field of "veterinary practice." However, even if an individual engages in conduct that meets either one of these criteria, the conduct must then fulfill another or second requisite—*i.e.*, the medical treatment or diagnostic procedure must be one that is performed "for any" animal's state of being that evidences what is commonly known as a "medical condition," whether it be mental, physical, or otherwise.

The final clause of section 3 applies to all that comes before it and functions as an additional prerequisite. *See Commonwealth v. Rosenbloom Finance Corp.*, 325 A.2d 907, 909 (Pa. 1974) ("When several words are followed by a modifying phrase which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the modifying phrase be read as applicable to all."). According to the plain language of the statute, the "physical condition[s]" that are manifested by animal(s) and treated by a practitioner must, *third*, be "conditions" that specifically "require[] [the] medication of any animal," "or," alternatively, be a procedure/treatment that is rendered "for the prevention of or the testing for the presence of any disease." For instance, every "diagnosis," "treatment," "prescription," "operation," or physical "manipulation" on an animal that is provided "for" the animal's "pain," "injury," or "physical condition or mental condition" must naturally and necessarily "require[]" the "medication" or "prevention" or "testing for the presence" of a "disease" that the "animal" may have. In this case, I believe that the State Board of Veterinary Medicine (Board) did not make findings of fact that would suffice to establish, as a matter of law, that Petitioner's conduct and/or procedure constituted "*medication*." Nor do the findings of fact demonstrate that Petitioner performed a procedure to identify by "*testing*"—

or ensure the "*prevention*" of—a specific or identifiable type of "*disease*." Absent such findings, I would conclude that the Board's adjudication should be reversed.

Importantly, the Board's abuse of discretion in its interpretation of section 3 is further borne out in its Order that veterinarians, whom the Board admits have no training in chiropractic manipulations, must oversee any chiropractic manipulation of the animal by a trained chiropractor. In other words, the veterinarian, a professional who otherwise lacks training in the particular field of "vertebral subluxations," is to oversee the performance of same by the professional who does possess such certification and training. To me, such an interpretation would be absurd, thus rendering it in violation of the statutory construction principles courts must apply. *See Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 313 (Pa. 2018) (noting that courts must presume that, in enacting a statute, "the General Assembly did not intend an absurd result"). Clearly, if the legislature intended by this statute that the field of veterinary medicine included manipulation of vertical subluxations, the veterinarians would be trained to perform such manipulations themselves or be trained to properly oversee those who do.[2]

Hence, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge

---

[2] Section 9(a) of the Act requires licensure for "[a]ny person wishing to practice *veterinary medicine*," 63 P.S. §485.9(a) (emphasis added), and for the reason explained above, Petitioner is not performing "*veterinary medicine*," as that term is defined in section 3(9) of the Act. *Id.* (emphasis added). As such, Petitioner does not need a veterinary license to perform chiropractic procedures on animals. Otherwise, the definition of the "practice *of* veterinary medicine" in section 3(10) of the Act applies to those who are already licensed and delineates the scope of the practice area and the realm of administrative oversight and regulation. 63 P.S. §485.3(10). Because Petitioner does not need a veterinary license, section 3(10) is inapplicable.